# In re Martin. Mates's Appeal.

*Mines and mining—Removal of mine inspector—Act of June 8, 1901, P. L. 535—Appeals—Certiorari.*

There is nothing in the Act of June 8, 1901, P. L. 535, providing a summary method for removing a mine inspector for negligence or incompetency, to sustain a petition for his removal because of his ineligibility for the appointment, or want of jurisdiction in the court appointing him, or want of co-operation and confidence of the miners.

Ineligibility for the appointment, or want of jurisdiction of the court to appoint, are grounds for ouster on quo warranto, but not for summary deprivation of office on petition under the act.

On appeal from an order of the court dismissing such petition the Supreme Court will consider the case as upon certiorari.

It seems that under the Act of June 8, 1901, P. L. 535, where a mine inspector appointed by the governor resigns, the judges of the court of com-

mon pleas have jurisdiction to fill the vacancy from among applicants possessing the proper qualifications.

Argued April 13, 1904. Appeal, No. 43, Jan. T., 1904, by plaintiffs, from order of C. P. Luzerne Co., Jan. T., 1904, No. 217, dismissing petition to remove mine inspector in case of William Mates et al. v. James Martin. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Petition to remove mine inspector.

The facts appear by the opinion of the court below which was as follows:

Pursuant to the provisions of the mine ventilation act of June 2, 1891, Mr. G. M. Williams was duly appointed by the governor to the office of inspector of mines. His term of office had not expired on January 1, 1902, when the amendatory act of June 8, 1901, went into effect. Before its expiration he resigned and Mr. E. E. Reynolds was appointed to fill the vacancy so occasioned. Mr. Reynolds resigned in December, 1903, whereupon the respondent was appointed in his stead by the judges of the court of common pleas of Luzerne county, pursuant to the provisions of section 13 of the act of 1901. In April, 1902, Mr. Martin had passed the examination prescribed by the act, and on May 16, 1902, had filed with the county commissioners the certificate to that effect required by law. A subsequent examination was held in June, 1903, at which the respondent did not appear for re-examination.

It is contended (1) that because he was not so re-examined he was ineligible as a candidate for appointment, and (2) that even if he were eligible, the judges were not empowered by the act of 1901, to appoint to a vacancy caused by the resignation during the term of office of an inspector appointed by the governor under the act of 1891.

Section 3 of article 2 of that act (viz: the old act of 1891) provides for the appointment of an examining board, etc., for the purpose of filling " any vacancy that may occur in the office of inspector of mines by reason of resignation, removal for cause, or from any other reason whatever."

In view of that fact that the examiners were appointed " In order to fill any vacancy," etc.—and since the old act fixed no

time for the performance of their duties, they might well doubt whether they had any right to hold an examination until after the vacancy occurred, and in practice this rule seems to have prevailed.

The practical result was that, in case of vacancy, the district concerned must remain without an inspector, and the dangers of such a situation continue for at least two weeks, pending advertisement of the examiners' meeting, and as much longer as might be required to complete the examination, select a candidate for recommendation to the governor, and have him properly commissioned. Indeed, the act contemplates a possible disagreement of the examiners in their selection, in which event the court must dissolve the board and appoint a new one with like additional delays. It is quite conceivable that successive disagreements by sucessive boards might postpone appointment to the vacancy for a long period, during which the district would be without a local inspector.

This defect is removed by the amendment of 1901, requiring examinations to be held at least yearly whether vacancies exist or not, and thus creating a body of competent men from whom an inspector may be promptly selected whenever a vacancy occurs. The amendment does not merely add something to or change some provision of the former enactment, but abrogates it entirely and substitutes a new one. Article III of the act of 1891 is amended " so as to read " in a particular way. This operates as a repeal of all its former provisions not incorporated in the amendment: Reid v. Smoulter, 128 Pa. 324; Luzerne Water Co. v. Toby's Creek Water Co., 6 Kulp, 237.

Among the matters retained in the new article is the expression of the purpose of its enactment. As in the old act, so in the new, the article covers the subject, " Inspectors and Inspection Districts," and provides for the appointment of examiners, etc., " in order to fill any vacancy in the office of inspector of mines." The act is surely broad enough to cover any such vacancy whatever, whether the former incumbent had been appointed under the old act or elected under the new. Indeed, the continuance in office after the amendment should go into effect, of inspectors appointed by the governor under the act of 1891 is expressly recognized and provided for in section 7 of the amendatory act.

So also the term of office (five years) created by the former act is distinctly recognized and referred to in that section. It is there provided that the " present inspectors who hold office under the appointment of the governor of the commonwealth shall continue in office until the expiration of the term for which they have been appointed," and that "at the expiration of the term of office " of any such inspector the vacancy so occasioned shall be filled by election. If it occur in any other way—as by resignation during the term—there is no provision for filling it other than by appointment by the judges as prescribed by section 13. If it could not be filled in that way it could not be filled at all. The governor could not do it (1) because the act empowering him to appoint has been repealed, and (2) because, if it had not been, he could only appoint for a full term of five years, whereas the amendment expressly requires an election for three years at the end of existing terms of office. The judges could not do it because not authorized. Such a vacancy must, therefore, remain unfilled, thus defeating to that extent the express purpose of the enactment to provide for the filling of any vacancy that may occur, etc.

We are of opinion that section 13 contemplates that " any vacancy in the office of inspector of mines " which occurs during the term for which the former incumbent was appointed or elected is to be filled by the judges by appointment for the unexpired term, " said appointee to be one of the persons having filed with the county commissioners of said county a certificate from the board of examiners showing that he passed a successful examination before the said board, and is duly qualified as hereinbefore mentioned "—i. e., qualified as a candidate for election would have to be, as specified in section 9. That is to say, the appointee must possess these qualifications : (1) He must have filed the required certificate, (2) be a citizen of Pennsylvania, (3) thirty years of age or more, (4) have knowledge of the different systems of mining, (5) must have produced to the examining board evidence of five years' experience, etc., (6) must have had experience in mines where explosive gases are evolved.

If a person possessed these qualifications in May, 1902, it is to be presumed that he continued to possess them in December, 1903.

In construing the act of 1901 the question, of course, is what was the intention of the legislature, and that, equally of course, is to be ascertained from the enactment taken as a whole.

As we interpret the statute, they intended, amongst other things :

1. That the amendatory provision entitled " Article II—Inspectors and Inspection Districts " should be a substitute for and fully supply that part of the act of 1891 also entitled " Article II—Inspectors and Inspection Districts."

2. That they meant to remedy the mischief of a possible long delay in filling a vacancy in the office of mine inspector, by requiring frequent examinations (at least annual) without regard to whether a vacancy existed or not, and thus supply a reserve force of competent men from whom vacancies could be filled without delay.

3. That they contemplated the filling of a vacancy by election, only where such vacancy should arise by expiration of the term of office and not where it should occur during said term, and that without regard to whether the term began by reason of election under the new act or by appointment under the old.

4. That the lawmakers used the phrases " said inspector " and " said term of office " with reference to the preceding context of the enactment as a whole, referring to elected inspectors only or to mine inspectors as a class, irrespective of how they were chosen, according to whether the one reference or the other would best harmonize with their general intent to cover the entire subject of " Inspectors and Inspection Districts." For example, where in section 10 it is provided that " The salary of each of said inspectors shall be three thousand dollars per annum," etc., the legislative purpose was to fix the salary to which a mine inspector should be entitled, whether elected or appointed, and not merely to provide compensation for elected inspectors and leave appointed inspectors unprovided for.

Nor in our opinion did they intend by sections 12 and 15 to impose the duties therein prescribed upon inspectors by election only ; nor, by section 14, that if an elected inspector should become incapacitated a deputy might be appointed, but not if the incapacitated officer happened to be appointed in-

stead of elected; nor, by section 19, to give this court juris-
diction to investigate charges of incompetency or malfeasance,
etc., in case the inspector in question were elected and to
deny such jurisdiction where (as in this case) the official con-
cerned was appointed. Neither, by parity of construction, do
we think that by section 13 it was intended that, if a vacancy oc-
curred during the term of office of an elected inspector it could
be filled by appointment, but if during the term of an appointed
inspector it could not be filled at all. Such a construction, as
already observed, would be manifestly at variance with the ex-
pressed purpose of the legislature to provide a way by this act
for the filling of "any vacancy that may occur in the office of
inspector of mines."

Assuming that the judges have the power to appoint to the
vacancy here in question, there is nothing in the act restricting
the exercise of that power to candidates whose successful ex-
amination shall have been passed within one year or any other
specified period before the time of appointment. It might be
that at the time fixed for the latest examination no candidates
appeared, while a dozen may have passed successfully at the
last preceding one and filed their certificates. And that might
have been a month earlier, for the act leaves the frequency
of the examination to be fixed by the board, "at least" one to
be held each year. Was it the legislative intent that in such
case no appointment could be made until the dozen who had
qualified themselves by doing all that the act required them to
do should have done something more which the act does not
require them to do, to wit: pass another examination within a
particular period of time? To so hold would be to read into
the statute what is not there and thus bring about that delay
in filling this important position which it was the apparent ob-
ject of the act to avoid. The evident purpose of the require-
ment for an examination is to obviate the danger of an in-
competent and unfit person being chosen as a mine inspector.
If this purpose could only be effected by a yearly re-examina-
tion of the same person, the legislature, presumably, would
have said so. On the contrary they have provided that one
examination shall qualify an elected inspector for three years,
without a re-examination during his term,—yearly or at any
other stated time.

The lawmaking power has seen fit to impose upon the judges the duty of selecting a proper person from among those possessing certain specified qualifications. Such selection has been confided to their discretion. In its exercise it is to be presumed that they will be guided by those same considerations of fairness and good judgment which should influence the performance of judicial functions. Thus, for example, we may conclude that the legislature assumed that the judges would not appoint some one whose certificate of examination was so old as to afford no evidence of his fitness to cope with modern conditions, and so refrained from introducing into the act a time limitation which might be productive of more harm than good. If, in the exercise of their discretion the judges were to draw from the act some indication of the legislative intent as to limitation of time in this respect, such intent would seem to be that the passing of an examination would qualify any one who succeeded in doing so for not less than three years; for it would surely be fair to assume that if it qualified a man who was elected to office for a period of three years, it would equally qualify another man who passed the same examination for a like period of time, even though the latter should not happen to be elected.

Upon a careful consideration of the testimony in the case and of the arguments advanced by the learned counsel for the petitioners, we are not satisfied that any valid and sufficient reason exists, either in fact or in law, calling for the revocation of Mr. Martin's appointment or his removal from office.

The petition is therefore dismissed.

*Error assigned* was the order dismissing the petition.

*H. W. Palmer*, with him *George H. Troutman* and *George J. Llewellyn*, for appellant.

*John T. Lenahan* and *Thomas F. Farrell*, for appellee.

Per Curiam, May 23, 1904:

This was a petition by fifty coal miners asking the court " to revoke the appointment of James Martin to the office of mine inspector."

The ground of the petition is stated in general to be " that

the same James Martin is incompetent " (meaning ineligible) " to perform the duties of the said office for causes that existed prior to his appointment, viz." specifying first, that Martin did not appear before the board of examiners in June, 1903, the last examination before his appointment as required by the act of June 8, 1901, and did not file the required certificate from the board; second, that Martin was passed at the examination in 1902 by the lowest possible average to qualify him, was a candidate at the next general election and was defeated; third, that Martin's certificate of examination in 1902 was never filed in the county commissioner's office as required by law; fourth, that the court had no authority to fill the vacancy to which Martin was appointed; and fifth, that " wanting the confidence and co-operation of the men employed in the mines " Martin cannot " effectively or efficiently perform the duties of the office."

The petition professes to be under the Act of June 8, 1901, P. L. 535, but it is clearly not within its provisions. By section 19, P. L. 545, on a petition by fifty or more reputable coal miners setting forth that any inspector of mines who " neglects his duties, or is incompetent, or is guilty of malfeasance in office, " the court shall issue a citation and if upon investigation it finds that the said inspector " is neglectful of his duties, or is incompetent to perform the duties of his office for any cause that existed previous to his election or that has arisen since his election, or that he is guilty of malfeasance in office " it shall remove him and proceed to fill the vacancy.

This is a statutory proceeding by which an officer, whether only appointed to fill a vacancy or regularly elected for a full term, can be deprived of his office upon summary hearing by the court upon charges preferred by irresponsible parties not even required to set forth that they are citizens or residents of his district. All such proceedings must show clear statutory authority to support them, and must follow the statutory provisions strictly. The present petition entirely fails in this respect. None of the grounds set forth in it is within the statute. The first three aver ineligibility for the appointment, and the fourth, want of jurisdiction in the court to appoint. These if valid objections are grounds for ouster on quo warranto but not for summary deprivation of office on petition under the act. Of

the fifth and last ground set up, that the miners will not co-operate with Martin and regard him with dislike, it is enough to say that it is not within the statutory grounds of removal and to sustain it would vest the appointment of inspectors in the miners instead of the voters or the court where the law places it.

We pass over the question of the right of appeal in such statutory proceedings, argued by appellee, and have considered the case as upon certiorari. If the court had granted the prayer of petition and removed Martin we should have been obliged on certiorari to reverse the order for plain want of jurisdiction under the statute, apparent on the face of the record. For the same reason we must now sustain the court in dismissing the petition.

In the view we take of the case the question of the jurisdiction of the court to fill the vacancy does not necessarily arise at the present time, but as it was carefully considered in the court below and has been elaborately argued in the paper-books here, we think proper to say that the opinion of the learned court below is a convincing vindication of its authority to appoint.

Order affirmed.