## Stocker's Estate.

*Wills—Life estates—Vested and contingent remainders—Period of vesting—Construction—Intention.*

A testatrix left her entire residuary estate in trust for her two unmarried sisters or the survivor of them, and on the death of the survivor, directed that the estate should "pass and vest in my heirs at law at that time as named in Item Sixth of this my will." In Item Sixth testatrix directed that all her property should be divided at the death of her last surviving unmarried sister, among certain persons who were specifically named and then said "as all my estate cannot be sold or divided at the death of my last unmarried sister, I direct that when it can be divided my executor will make the same division as above." In a second residuary clause testatrix bequeathed her residuary estate, one-half to the daughters of her sister and the other half "to Harry B. French and children." Certain of the legatees named in Item Sixth died before the termination of the life estates. *Held,* that the legatees named in Item Sixth took vested, not contingent remainders.

Argued Jan. 17, 1918. Appeal, No. 244, Jan. T., 1917, by Harry B. French and Ida French Graff, from decree of O. C. Philadelphia Co., Oct. T., 1886, No. 596, sustaining exceptions to adjudication, In Estate of Anna Maria Stocker, deceased. Before Brown, C. J., Stewart, Moschzisker, Frazer and Walling, JJ. Affirmed.

Exceptions to adjudication.

The facts appear in the following opinion by Gest, J.:

The testatrix left her entire residuary estate in trust for her two unmarried sisters, or the survivor of them, and on the death of the survivor directed that the estate should "pass and vest in my heirs at law at that time as named in item sixth of this my will." By the following paragraph of her will, she directed that all the property that could be divided at the death of her last surviving unmarried sister should be divided by her trustees in certain proportions among certain persons who were specifically named. She then said, "as all my estate cannot be

sold or divided at the death of my last unmarried sister, I direct that when it can be divided my executors and trustees will make the same division as above." During the pendency of the life estate certain of the legatees died, and the narrow question raised by these exceptions is whether their legacies were vested, in which case they would pass to their personal representatives, or whether they were contingent upon the legatees surviving the life tenants, in which case the legacies, it is claimed, pass under a so-called second residuary clause, in words following: "I leave the daughters of my sister, Caroline S. Elbert, the half of my residuary estate and Harry B. French and children the other half."

It is quite obvious that when the testatrix at the end of the fifth clause referred to her heirs at law as named in item sixth of her will, she did not use the words in their technical sense, for the persons named were not her heirs at law. Some of her heirs were not mentioned, and some of the persons named were not her heirs at law at all. What she meant by "heirs" was the legatees whom she designated by name. "Heirs" in a will, especially a will written as was this inops consillii is often used in its popular sense to include legatees or devisees who are made heirs by the will: Hoff's App., 28 Pa. 51; Widmeyer's Est., 45 Pitts. L. J. 208. The word was used in this sense also in the eighth item of this will. The meaning is, of course, a question of intention. Porter's App., 45 Pa. 201, and in this case there can be no doubt that the testatrix referred to the particular designated legatees.

In the next paragraph of her will the testatrix directs the distribution of all her estate that can be divided at the death of her last surviving sister, evidently having in mind what indeed proved to be the fact, that part of her estate was represented by an interest in a large tract of land in the southern part of the city not sold until recently, and she then further directed that when her estate could be divided the division was to be the same as above.

We are of opinion that the remainders given to the legatees named in item sixth were vested and not contingent upon their surviving Emily H. Stocker, who died on June 18, 1913. The gift to the legatees was one that would necessarily take effect in possession upon the termination of the preceding life estates and subject to no other conditions save that termination so far as the express words of the will afford an indication of the testamentary purpose. There is no gift to a class, for the legatees are named individually with the proportions exactly stated in which they are to share the estate, and there is an entire absence of any words expressive of survivorship or the like.

That there is a strong presumption of law in favor of a vested estate is indeed admitted by the auditing judge, and Bair's Est., 255 Pa. 169, cited in the adjudication, is a recent illustration of it. The argument in favor of the contingency turns on the phraseology that the estate shall "pass and vest in my heirs at law at that time," i. e., the death of the life tenants, and the direction in the sixth item that the property shall be "divided and distributed." But the will does not say "shall pass and vest at that time to my heirs at law," the words on which such stress is laid do not immediately follow and thus qualify the word "vest," or indicate that the period of vesting should be postponed or be subject to a contingency. The normal sense of the word "vest" indeed is to indicate a present and immediate interest as distinguished from one that is contingent. McClellan's Est., 221 Pa. 261, where Judge ASHMAN, whose opinion was adopted by the Supreme Court, said by way of illustration "an estate in remainder is vested in the remaindermen, although its enjoyment is deferred until the falling in of the life estate. Certainly in a will such as the present, it would be dangerous to hold that even if the testatrix had said "vest at that time," she meant that no interest should pass but remain contingent until that time. This would impale her intent on a sharp point of

law, for what she most probably meant by vest was to vest in actual use or possession: Phillip's Est., No. 1, 205 Pa. 504.

We do not discover any intent in the use of the words "to be given and distributed," that the gift is only implied from the direction to pay, as in Moore v. Smith, 9 Watts 403, cited by the auditing judge, where the direction was to pay to the legatees "as soon as he arrives at twenty-one years of age." In Rosengarten v. Ashton, 228 Pa. 389; Moore v. Smith, 9 Watts 403, was cited, but the court expressly stated that no rule as to vested and contingent remainders was especially called for in construing the will and decided the case on the clear ground that there was a substitutionary gift to the issue if a deceased grandchild of the share the parent would have taken if living, thus showing the intent of the testator, that a grandchild should only take if living at the death of the last child of the testator. Mulliken v. Earnshaw, 209 Pa. 226, was a similar case, and totally unlike the present. In the recent case of Rau's Est., 254 Pa. 464, in which Rosengarten v. Ashton, 228 Pa. 389, was distinguished, the court stated the general rule to be that an interest is to be construed as contingent only where it is impossible to construe it as vested, and said, "The whole policy of the law inclines to the vesting of legacies and allows that policy to yield only where a contrary purpose is expressed in the will."

It was urged at the argument that the very object of the so-called second residuary clause was to dispose of any lapsed legacies in the first residuary clause. We cannot persuade ourselves that this was the intention of the testatrix; that this is extremely unlikely appears from the fact that the legatees mentioned in the second residuary clause were also included among the legatees in the first. The intention to give lapsed legacies to the very persons whose death or the death of some of whom might occasion the lapse would be too extraordinary to attribute to any one. The cases are not infrequent where

a testator has employed two residuary clauses, whether from carelessness or stupidity, or some undiscoverable reason, but we are not bound to find a meaning for that which is insensible, or what is worse, strain the will in order to create an intestacy so that the second residuary clause may have something to operate on.

In the view we take of this case, it is not necessary to consider the questions raised by the other exceptions.

The exceptions filed by Laurette de T. Elbert et al., and those filed by Pennsylvania Company for Insurance on Lives, etc., trustees under the will of Anthony E. Stocker, are sustained; the other exceptions are dis-. missed. The balance for distribution is awarded to and among the legatees named in the sixth item of the will, or the legal representatives of such as are deceased, subject to the assignments and agreements recited in the adjudication.

ANDERSON, J., dissents.

The court sustained the exceptions. Harry B. French and Ida French Graff appealed.

*Errors assigned* were in sustaining the exceptions.

*David Jay Myers,* with him *William Henry Kern* and *Alfred T. Steinmetz,* for appellants.

*Hampton L. Carson,* with him *Francis A. Lewis, 3d, Joseph Carson, Duane, Morris & Heckscher* and *Prichard, Saul, Bayard & Evans,* for appellees.

PER CURIAM, February 25, 1918:

This appeal is dismissed and the decree affirmed, at appellants' costs, on the opinion of the learned court below sustaining the exceptions to the adjudication.