## Groninger's Estate.

*Wills—Construction—Remainders — Vested — Contingent — Intention of testator—Presumption in favor of vested interest—Provision for children—Form of bequest.*

1. Two children surviving a testator take a vested remainder under his will giving a life estate to testator's wife, in all his property, with a provision that "at her death the estate shall be divided equally. between my children, if any living, if none, to my nearest heirs, all my property......at the time of my death"

2. The word "any" means "one indifferently out of a number," and testator evidently used it in that sense.

3. What the testator had in mind and intended to provide for was an equal division of his estate between the two children, and also postponement of actual distribution in order to let in the life estate of the mother.

4. If a testator's meaning is vague, a remainder will be construed as vested rather than contingent.

5. When a remainder following a life estate is given to one's heirs, the heirs living at the death of the testator, and not those at the death of the life tenant, take, unless the will itself contains convincing evidence of a contrary intent.

6. The presumption that "a legacy is intended to be vested" applies with far greater force where a testator is making provision for his children than where the gift is to strangers or collateral relatives for the reason that, in the absence of plain evidence on the face of the will itself of a purpose to that end, it cannot be contemplated that one would intend to cut off possible surviving grandchildren, from an inheritance given their parent simply because the latter might happen to die during the continuance of an anterior life estate.

7. The mere fact that a bequest is to divide the estate between testator's children upon the death of their mother and happens to be associated with the creation of the remainder, is not decisive that the remainder is contingent upon the children surviving their mother, inasmuch as the question as to the time of the vesting

of the interest is the intention of the testator, and where the intention appears in the will, the form of the bequest must be regarded as immaterial.

8. Though there be no other gift than in the direction to pay or distribute in future, yet if such gift or distribution be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest, the vesting will not be deferred till the period in question.

Rosengarten v. Ashton, 228 Pa. 389, explained.

Argued May 25, 1920. Appeal, No. 5, May T., 1920, by Edna Groninger Kochenour from decree of Orphans' Court of Dauphin County, dismissing petition to vacate certain proceedings in estate of Charles Elliott Groninger, deceased. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Case-stated to determine whether Charles Elliott Groninger had a vested or contingent interest in an estate under his father's will. Before KUNKEL, P. J. ·

The opinion of the Supreme Court states the facts.

The court held that the interest was a vested one, and dismissed the petition. The petitioner, Edna Groninger Kochenour, appealed.

*Errors assigned* were (1) finding interest vested, and (2) order of court dismissing petition, quoting record.

*John R. Geyer,* with him *Philip S. Moyer* and *John E. Fox,* for appellant.—Testator intended the estate to go to the children living at the death of the widow. The gift is implied only from the direction to divide: Rosengarten v. Ashton, 228 Pa. 389; Reiff's App., 124 Pa. 145; Moore v. Smith, 9 Watts 403; Battenfield v. Kline, 228 Pa. 91; Sternbergh's Est., 250 Pa. 167; Rudy's Est., 185 Pa. 359; Reilly's App., 200 Pa. 288.

*William M. Hain,* for appellee.—The law favors vested rather than contingent estates; unless it clearly ap-

pears that a contingent interest was intended, the remainder will be regarded as vested; and where time is not annexed to the gift but to the payment of it, the estate is vested: Bair's Est., 255 Pa. 169; Carstensen's Est., 196 Pa. 325; Rau's Est., 254 Pa. 464, 472; Marshall's Est., 262 Pa. 145; Neel's Est., 252 Pa. 394.

OPINION BY MR. JUSTICE MOSCHZISKER, June 26, 1920:

Stuart Groninger died in 1900, leaving to survive him a widow, Rosa A. Groninger, a son, Charles Elliott Groninger, and a daughter, Edna Groninger, now Edna Groninger Kochenour; he provided by his will: "all property, real, personal and mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, I devise, bequeath and dispose thereof in manner following, to wit: [after direction to pay debts] I give, devise and bequeath [the property above recited] to my beloved wife, Rosa A. Groninger, as long as she lives; at her death the estate shall be divided equally between my children, if any living, if none, to my nearest heirs, all my property, real, personal and mixed whatsoever and wheresoever, at the time of my death, including B. of L. E. Insurance."

Charles Elliott Groninger departed this life in 1914, intestate, and without issue, leaving a widow Anna V. Groninger; May 30, 1916, Rosa A. Groninger, the life tenant, died. Subsequently, the son's widow—proceeding on the theory that her late husband, under the will of his father, possessed a vested remainder in certain real estate, situate in the City of Harrisburg—had an undivided one-half interest therein set aside to her at a valuation, which was duly confirmed by the Orphans' Court of Dauphin County, in accord with the relevant acts of assembly.

January 29, 1919, Edna Groninger Kochenour presented a petition to the court below praying the proceedings instituted by her brother's widow be vacated, on the ground that Charles Elliott Groninger had but a con-

tingent interest, which, since he died before his mother, never vested; whereupon the parties executed a writing in the nature of a case-stated, setting forth the above recited facts and agreeing, if the court below should be of opinion that, by the terms of the will of Stuart Groninger, deceased, his son Charles was given a vested remainder on the death of testator, then the petition should be dismissed, but if the remainder was contingent upon Charles surviving his mother, the proceedings attacked should be vacated.

The court decided the interest in question to be vested, and accordingly dismissed Edna Groninger Kochenour's petition; she has appealed.

It may be testator's intentions are not clearly expressed, still our first duty is to examine the will, and if possible ascertain its meaning without reference to canons of construction (Mulliken v. Earnshaw, 209 Pa. 266); this we shall proceed to do.

It will be noticed testator, after giving a life interest to his wife, provides that, "at her death," his estate shall "be divided equally between [his] children, if any living." He does not use the phrase "then living," nor does he say his property shall go to such children as may "then be living"; he employs no such expression. The word "any" means "one indifferently out of a number" (Webster's Collegiate Dictionary), and testator evidently used it in that sense. Stuart Groninger had but two children; and the will, according to a fair interpretation of its language, says his estate is to be "divided equally between" them, if either one is living at the actual distribution thereof, which he directs shall not take place till the expiration of a prior life estate. Since the property in question could not be "divided equally between" one child, should only one survive the life tenant (which has eventuated), what, as a matter of fact, the father must have had in mind and intended to provide for was an equal division of his estate between the

two children and also postponement of actual distribution, in order to let in the life interest given their mother.

The thought that Stuart Groninger intended his property to vest in such children as might survive him, and not the life tenant, is strongly supported by the further provision, in the same sentence of the will, that, if "none" of his children survive, then the estate is to go to testator's "nearest heirs." It is established with us that, when a remainder following a life estate is given to one's heirs, the heirs living at the death of the testator, and not those at the death of the life tenant, take, unless the will itself contains convincing evidence of a contrary intent (Buzby's App., 61 Pa. 111; Stewart's Est., 147 Pa. 383; Fuller's Est., 225 Pa. 626; Fitzpatrick's Est., 233 Pa. 33; Tatham's Est., 250 Pa. 269); but here it is not necessary to call upon this rule of construction, for testator, by the parenthetical clause—"at the time of my death"—found toward the end of the present devise, may well be understood to indicate an intention specifically to designate the first class of beneficiaries. This is significant, in connection with our instant consideration, because the substitutionary provision in favor of testator's heirs occurs "in the same sentence, and in the same distribution of his property," as the one for children, and since, by the former provision, he clearly intends heirs living at his death, so also must a similar meaning be ascribed to the latter, so far as children are concerned: Redding v. Rice, 171 Pa. 301, 305.

As previously said, a fair interpretation of the language used in his father's will fully supports the decision that Charles Elliott Groninger died possessed of a vested remainder; but if, for sake of argument, it be conceded testator's meaning is vague, still the interest under discussion cannot be adjudged contingent. "What is required in such case is not that the words of the will admit of a possible, or even a reasonable, inference that the testator intended a contingent remainder, but that

such intention should appear plainly, manifestly and indisputably," otherwise the estate in remainder is always held to be vested: Mr. Justice STEWART in McCauley's Est., 257 Pa. 377, 380-381; also see Neel's Est., 252 Pa. 394, 405.

If, on the theory of vagueness in the instrument we have to interpret, the applicable principles of law and relevant rules of construction are invoked, it is clear that testator—by the directions that, at the life tenant's demise, the property should be divided equally between his children—meant to fix simply the time when the actual enjoyment of the remainders already vested in such children should pass to them; and, of course, in the event of the death of either one, these vested interests would go to those who might be entitled to their respective estates, as heirs or otherwise. The rules and principles applicable to this class of cases have been so often, and so lately, discussed by us that it is not necessary to reiterate them here—it is enough to refer to Hood v. Maires, 255 Pa. 128; Bair's Est., Id. 169, also authorities already cited, and others to be mentioned; but, before taking up the next subject for consideration, it may be well to note that this court early decided "the presumption that a legacy is intended to be vested" applies with far greater force where a testator is making provision for his children than where the gift is to strangers or collateral relatives (Wengerd's Est., 143 Pa. 615, 621; also see Minnig v. Batdorff, 5 Pa. 503), and the reason for this is apparent, for, in the absence of plain evidence on the face of the will itself of a purpose to that end, it cannot be contemplated that one would intend to cut off possible surviving grandchildren, from an inheritance given their parent, simply because the latter might happen to die during the continuance of an anterior life estate.

We might stop at this point, but there is one other matter which it seems well to discuss. Appellant contends that the gift in remainder is "implied only from

the direction to divide" contained in testator's will, and hence this direction is "annexed to the devise itself," and, as a consequence, the "vesting in interest"—not merely in "possession or enjoyment"—is postponed; citing Mr. Justice BROWN, in Rosengarten v. Ashton, 228 Pa. 389.

While the rule just referred to is well established, it does not control the present case. Of course, where a will sheds no light upon the subject of the testator's intent—as to the vesting of remainders—other than that shown by a direction to pay or divide the principal at a designated future time, and the gifts in remainder are implied solely from the "direction to pay," such gifts are "necessarily inseparable" from the direction, and "partake of its quality, insomuch that, if the one is future and contingent, so must the other be": Moore v. Smith, 9 Watts 403, 407. However, in Man's Est., 160 Pa. 609, 612, 613 (cited in Rosengarten v. Ashton), where the bequest was to "divide" the principal at the death of the life tenant, we held remainders thus created to be vested, saying: "where there is a bequest in the form of a direction to pay, or pay and divide, 'from and after' the happening of any event," without more, the remainder is usually accounted contingent: "but if, upon the whole will, it appears that the future gift is only postponed to let in some other interest, or, as the court has commonly expressed it, for the greater convenience of the estate ......, the interest is vested notwithstanding, although the enjoyment is postponed." Again, in a most recent case upon the subject, Jenning's Est., 266 Pa. 60, where (as here) the remainders rest upon a direction to "divide" testator's estate between his children upon the death of their mother, we held the interests of the children to be vested remainders, citing Marshall's Est., 262 Pa. 145, 149.

The last mentioned case so plainly states the limitations upon the rule referred to in Rosengarten v. Ashton, that all should now appreciate it is not invariably applicable whenever a direction for distribution happens

to be associated with the creation of a remainder; but, since a number of recent appeals indicate misapprehension upon this point, we deem it wise to repeat the following relevant matter from the opinion of Chief Justice BROWN in Marshall's Est. (p. 149): "Though there be no other gift than in the direction to pay or distribute in futuro, yet if such gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest, the vesting will not be deferred till the period in question. Thus where stock is bequeathed to A. for life, and after his decease to trustees, upon trust to sell and......divide the proceeds.......between C. and D.; as the payment or distribution is evidently deferred until the decease of A., for the purpose of giving precedence to his life interest, the ulterior legatees take a vested interest at the decease of the testator: 1 Jarm. on Wills, 764. Where the enjoyment of the gift over is postponed to accommodate the estate, or for the payment of debts, or to meet any other burden first imposed, and not chiefly on account of the character of the donee, it is regarded as a decisive circumstance in favor of immediate vesting: 2 Redf. on Wills, 236, section 37......The mode or form of the bequest seems to be regarded by Vice-Chancellor Wigram as immaterial......The question is one of substance and not of form, and in all cases it is whether the testator intended it [as] a condition precedent that the legatees should survive the time appointed by him for the payment of their legacies; the answer to this question must be sought for out of the whole will, and not in the particular expression only in which the gift is made: Leeming v. Sherratt, 2 Hare 14; McClure's App., 72 Pa. 414." See also Milligan's Est., 244 Pa. 161; Reeder's Est., 254 Pa. 85; Rau's Est., 254 Pa. 464; Strocker's Est., 260 Pa. 385; and Packer's Est. (No. 2), 246 Pa. 116, 126, 127.

The assignments of error are overruled and the decree is affirmed at cost of appellant.