## Read's Estate.

*Wills—Construction—Gifts over to persons entitled under the intestate law.*

1. A testator who makes a gift in remainder to heirs or next of kin or to persons who would take under the intestate laws, or gives the estate in accordance with the law or the like, will be understood to intend those persons who would have so taken at the time of his death and not at the time appointed for their taking, in the absence of a satisfactory indication from the language of the will of an intent that those persons should take who would meet the description at the period of distribution.

2. In ascertaining the actual intent, we must put ourselves in the position of the testator and examine the language of the will as he would have read it; in doing this, however, we must look for the intent in the words of the will, and not otherwise.

3. The testatrix made a series of contingent gifts of income and principal to life-tenants and their issue, and directed her trustees in case both life-tenants should die without issue *"then* to pay, transfer and deliver said principal" to certain pecuniary legatees, if living, and a daughter-in-law, C. M. T., "and" in the event of the said C. M. T. being *then* deceased or married, I direct the said Trustees to pay over the said residue and remainder of my estate to such person or persons as *would* take the same from, through or under me according to the Intestate Law of Pennsylvania." The contingent gifts to the pecuniary legatees and the daughter-in-law fell because of their prior deaths, and the life-tenants died without issue: *Held,* distribution should be awarded to those who answered the description of being the next of kin of the testatrix on the date of the death of the last life-tenant, because the residuary clause contains a succession of contingencies, the testatrix has used the word "then" (death of last life-tenant) as indicating the time when the gift arising by implication from a direction to pay should spring into being, and the payment is directed in the subjunctive mood, which is in keeping with the other *indicia* of a contingency.

Adjudication. Account of The Pennsylvania Company for Insurances on Lives and Granting Annuities, trustee. O. C. Phila. Co., Jan. T., 1887, No. 490.

*R. M. Remick* (of *Saul, Ewing, Remick & Saul*), for accountant.

*Harvey Gourley,* for Margaret N. Thomson, executrix of the will of George H. Thomson, deceased, and for J. Trowbridge Bailey, administrator of the estate of Amy T. Bailey, deceased.

*Russell Duane* (of *Duane, Morris & Heckscher*), for George W. Norris, Mary Garesche Norris, William Newbold Ely, guardian of Elisabeth Norris, and Jean L. Griffiths, guardian of Franklin A. Dick and Mai G. N. Dick.

*Frank Smith,* for Daniel A. Newhall and Marian Newhall O'Brien, guardians of Orville Horwitz.

*Charles S. Schofield,* for Commonwealth, claiming inheritance tax.

HENDERSON, J., April 4, 1922.—The trust in this estate arose under the will of Amelia Read, who died Sept. 19, 1886.

By the residuary clause of her will the testatrix directed as follows:

"And as to the rest, residue and remainder of said interest, income, dividends and profits and as to all of same after the death or marriage of the said Caroline M. Thomson, to pay said interest, income, dividends and profits to my grandchildren George H. Thomson and Amelia Read Thomson for and during their natural lives in equal shares as the same are received, or if either of them be dead without issue the whole of said interest and income to the survivor, into his, her or their own hands, or to his, her or their own order, for his, her or their own sole and separate uses respectively, so that the same shall not be liable for his, her or their contracts, debts or engagements or subject to attachment, execution or other process for the recovery or collec-

Read's Estate.

tion thereof, so the same shall not be subject to the control of any husband the said Amelia may have or take, or to his contracts or engagements, and in case both of my said grandchildren shall die leaving issue, then to pay, transfer, convey and assign and deliver the one-half of the whole capital or principal of said Estate upon decease of either of said Grandchildren to his or her respective issue, such issue taking only a parent's share, and in case both of my said grandchildren should die and only one of them leave issue, *then* if both be dead, to pay, transfer, convey, assign and deliver the whole capital or principal aforesaid to such issue, but in case both of my said grandchildren should die without issue, *then* to pay, transfer and deliver said principal or capital as follows, viz.:

"To my sister Adaline Thomson if she be living, out of same, the sum of ten thousand dollars.

"To John Meredith Read, son of my late husband, or if he be dead to his children the sum of Twenty thousand Dollars, and to my daughter-in-law Caroline M. Thomson, if she be then living and my Son's widow, all the rest, residue and remainder of the said principal absolutely, and in the event of the said Caroline M. Thomson being then deceased or married, I direct the said Trustees to pay over the said residue and remainder of my estate to such person or persons as would take the same from, through or under me according to the Intestate law of Pennsylvania."

The trust has terminated. The grandson, George H. Thomson, never had issue and died April 15, 1920; Amelia Read Thomson Bailey had a child born dead, and died without issue on Dec. 2, 1921; Adaline Thomson died in 1906, and, hence, her contingent gift falls; John Meredith Read is dead, and, hence, the sum of $20,000 will be payable to his children, Harmon Pumpelly Read, Emily Meredith Read Spencer, John Meredith Read and Marie Delphine Meredith Read de Foras; Caroline M. Thomson died in 1894, and, hence, the contingent gift of the residue to her falls; and, therefore, the fund will be distributable under the final residuary clause "to such person or persons as would take the same from, through or under me (the testatrix) according to the intestate law of Pennsylvania."

Two sets of claimants are before me: (1) The personal representatives of the deceased grandson and granddaughter, who were the heirs of the decedent at the time of her death; and (2) the descendants of the decedent's sister, who would be her heirs if ascertained as of the death of the last life-tenant.

In construing this clause, we should bear in mind the general rule so well stated by Judge Gest in an opinion filed Feb. 3, 1922, in Leech's Estate, 1 D. & C. 352: "It cannot be disputed that, as a general rule of construction, a testator who makes a gift in remainder to heirs or next of kin, or to the persons who would take under the intestate laws, or gives the estate in accordance with the law, or the like, will be understood to intend those persons who would have so taken at the time of his death and not at the time appointed for their taking. This is not a mere arbitrary rule, but is founded upon common sense, for a testator, in making such a provision, is naturally enough contemplating his own death as the period when the objects of his bounty should be ascertained; and, moreover, the persons thus entitled under the intestate laws have a statutory right which should prevail, unless it appears that the testator intended that others should take, and this contrary intention must, as the decisions show, be clear and convincing."

The collateral heirs of the testatrix contend that this case involves an exception to the general rule, because "a different intent is plainly manifested in (her) will:" McFillin's Estate, 235 Pa. 175.

2 D. & C.

Read's Estate.

It is argued that paragraph 4 of the will manifests a clear intent that the heirs shall be ascertained as of the death of the last life-tenant, and that when the "actual intent" is ascertained, it should be followed: English's Estate, 170 Pa. 1.

In ascertaining the actual intent we must put ourselves in the position of the testatrix and examine the language of her will as she would read it: Shaffer's Estate, 262 Pa. 15. In doing this, however, we must look for the intent in the words of the will, and not otherwise.

With these principles in mind, I will examine the provisions of this residuary clause.

There is, first, a vested life estate in the two grandchildren, then a contingent gift in remainder to their issue respectively, or to the issue of the survivor if the first one to pass away leaves none; if neither leaves issue, then a contingent gift of $10,000 to her sister, Adaline Thomson, and a contingent gift of $20,000 to John Meredith Read, a son of her late husband; and if he be not alive, the said sum to his children; then the remainder absolutely to her daughter-in-law, Caroline M. Thomson, if she be "then" living; "and in the event of the said Caroline M. Thomson being then deceased or married, I direct the said Trustees to pay over the said residue and remainder of my Estate to such person or persons as would take the same from, through or under me according to the Intestate Law of Pennsylvania."

With the exception of $20,000 payable to the children of John Meredith Read, this fund passes under the last quoted clause.

It is argued that the persons who take should be ascertained as of the death of the last life-tenant, because (1) this clause follows a series of contingent legacies and is introduced by the word "then" in the preceding clause; (2) the designation of the persons as those who "would" take; and (3) the gift in remainder is implied from a direction to pay and divide.

In weighing this argument we should recall that the intention to substitute the heirs ascertained as of the death of the life-tenant must "be clear and convincing."

I will consider each argument in order.

(1) Because this clause follows a series of contingent legacies and is introduced by the word "then" in the preceding clause. I will sketch the essential language of this residuary clause in outline:

"And as to the rest . . . of said . . . income . . . to pay said . . . income . . . to my grandchildren George H. and Amelia Read Thomson for . . . their . . . lives, . . . or *if either* . . . *be dead without issue,* the whole of said interest . . . to the survivor, . . . and *in case both* . . . *die leaving issue,* then *to pay* . . . the one half . . . to his or her . . . issue, . . . *and in case both* . . . *should die* and *only one* . . . leave issue, *then if both be dead,* to pay . . . the whole capital . . . to such issue, *but in case both* . . . should die without issue, *then to pay* . . . said . . . capital as follows, viz.:

"To my sister Adaline, . . . *if she be living,* . . . the sum of $10,000.

"To John Meredith Read, . . . or *he be dead* to his children the sum of $20,000, and to my daughter-in-law Caroline M. Thomson, *if she be then living* and *my son's widow,* all the rest . . . of said principal absolutely, *and in the event of the said Caroline M. Thomson being then deceased or married,* I direct the . . . trustees *to pay* . . . said residue . . . to such person or persons as *would* take the same from . . . me according to the Intestate law of Pennsylvania."

In this sketch of the essential language of this clause I have underscored the clauses expressing contingencies. No less than ten contingent phrases

making a series of contingent gifts are employed. This much must necessarily be conceded; but it is urged that the final clause, to pay to such persons, &c., is not introduced by the adverb "then," so as to read "then to pay," etc. This is true, so far as the immediate context is concerned, but is it true in fact? A reference to the first paragraph of the residuary clause will show that, upon the failure of issue of her grandchildren, she says: "*then* to pay said capital as follows:" This is the introduction to the balance of the clause; all that comes after is subject to this direction.

There is also a further fixing of the time when, before we reach the final direction to pay, "in the event the said Caroline M. Thomson being *then* deceased, . . . I direct the trustees to pay," &c. Can we not say that upon the death of the last life-tenant without issue the direction is then to pay to Caroline M. Thomson, and in the event of her death, which previously occurred, she "being then deceased," the direction is to pay: When? Then? I am inclined to this view, but for the present reserve judgment.

It is urged that a somewhat similar gift in remainder was construed as contingent in Hildebrant's Estate, 268 Pa. 132-135, whereing Mr. Justice Simpson said: "It is fair to presume this thought (contingent) was continued throughout the balance of the will; indeed, it is the normal meaning of the words: 'In the event that he (the son) should die without leaving issue (which, of course, means issue surviving him and not issue surviving the testator), I direct my estate to be divided among my relatives under the intestate laws of Pennsylvania.' "

(2) Designation of the persons as those who "would" take. There are a number of cases holding that the word "would," in itself, is not sufficient to create a contingency, yet "would" may be used in describing a future contingency. It is a factor to be weighed in reaching a conclusion.

(3) The gift in remainder is implied from a direction to pay and divide. When there is an antecedent gift, a direction to pay merely fixes the time when possession is directed: When the direction to pay follows a time "when," it has a contingent aspect, because the gift only arises by implication from the direction to pay, and when the direction to pay is at a given time, it is held that fixes the nature of the gift. This is another element to be weighed.

On this aspect of the case the language of Chief Justice Moschzisker in Groninger's Estate, 268 Pa. 184-189, is informing:

"Appellant contends that the gift in remainder is 'implied only from the direction to divide' contained in testator's will, and, hence, this direction is 'annexed to the devise itself,' and, as a consequence, the 'vesting in interest,' not merely in 'possession or enjoyment,' is postponed, citing Mr. Justice Brown in Rosengarten v. Ashton, 228 Pa. 389.

"While the rule just referred to is well established, it does not control the present case. Of course, where a will sheds no light upon the subject of the testator's intent as to the vesting of remainders, other than that shown by a direction to pay or divide the principal at a designated future time, and the gifts in remainder are implied solely from the 'direction to pay,' such gifts are 'necessarily inseparable' from the direction and 'partake of its quality, insomuch that, if the one is future and contingent, so must the other be:' Moore v. Smith, 9 Watts, 403, 407. However, in Man's Estate, 160 Pa. 609, 612, 613 (cited in Rosengarten v. Ashton), where the bequest was to 'divide' the principal at the death of the life-tenant, we held remainders thus created to be vested, saying: 'Where there is a bequest in the form of a direction to

2 D. & C.

pay, or pay and divide (from and after) the happening of any event' without more, the remainder is usually accounted contingent; 'but if, upon the whole will, it appears that the future gift is only postponed to let in some other interest, or, as the court has commonly expressed it, for the greater convenience of the estate, . . . the interest is vested notwithstanding, although the enjoyment is postponed."

In Alburger's Estate, 274 Pa. 15, Mr. Justice Kephart said:

"The question presented by these appeals is one that has been before the court many times. The clause disposing of testator's residuary estate reads: 'Shall pay over the net income . . . to my wife . . . for . . . her natural life, and, upon . . . decease of my . . . wife, to divide the principal of my said residuary estate to and among my surviving brothers and sisters and the issue of such of my brothers and sisters as may be deceased, such issue to take only the share which their deceased parent would have taken if living.' . . . .

"When we look at the will from the standpoint of a layman, we are impressed at once with the thought testator intended to give his estate to his brothers and sisters, or the issue of his brothers and sisters surviving or living at the death of his widow. The court below held the remainder was contingent from different points of view. This divergence in thought is brought about because the words used to express testator's intent make it a close case; the difficulties arose not from anything testator refrained from doing, as witness the general import of the will, but from adjudication of prior cases, wherein, through the application of artificial rules of construction to similar wills, there is here introduced a doubt which otherwise would not exist. These rules of construction have no place in determining the intention of a testator where it is reasonably clear from the will itself, but, when we compare the language of wills there disputed, we find a remarkable similarity in thought, with legal conclusions therefrom not altogether harmonious, and it would be more than difficult for the writer of this opinion to follow the finely spun threads of distinction used in emphasizing the distinguishing element of each. . . .

"Testator's will seems to indicate an intention to create an estate to begin and take effect at the widow's death, and it first appears as such from the direction to pay and divide the principal; the persons who are to take are the persons to be then ascertained as in being 'among my surviving brothers and sisters;' and, reasoning from the substitutionary bequests, it is made more certain, for it then appears 'among my surviving brothers and sisters,' 'if living,' and if not living, the issue of such brothers and sisters are substituted to take only the share their deceased parent would take. It means, moreover, the issue of the deceased parent could take only if the deceased parent was not living at the death of the life-tenant. Much of the language of this clause would have been unnecessary if testator had intended the brothers and sisters to have a vested remainder and were not to be alive at the time of distribution. Here the time fixed for the enjoyment, as well as the description of the thing to be enjoyed, made up the entire ulterior estate by a specific clause of the will, so that the period fixed is annexed not only to the payment and division, but also to the gift or devise itself arising from division and payment. It follows then that the individuals to take could not be ascertained until the determination of the life-estate. And, while this was a fixed, determined period, as the widow must die, the uncertain event was the survival of brothers and sisters, or issue of brothers and sisters. . . .

"There was no direct or express gift to the brothers and sisters, and it only arose from the direction to pay and divide. It was early held that where the gift is implied from this direction it is contingent, unless, under the peculiar circumstances of the devise or from the whole will, a contrary intention appears or the devise is postponed to let in some other interests: McClure's Appeal, 72 Pa. 414, 417. (See detailed the controlling principles in Groninger's Estate, 268 Pa. 184, as to vested estates.) The rule is laid down by our Brother Simpson, in Hildebrant's Estate, 268 Pa. 132, 135, that contingency is the usual legal conclusion where the gift to the remainderman is found only in a direction to divide the estate among them after the death of the life-tenant."

Viewing this will from its four corners, I have reached the conclusion that the testatrix intended to give this remainder to those who would be her heirs at the time of the death of the last life-tenant. The residuary clause contains a succession of contingencies; she has used the word "then" (death of last life-tenant) as indicating the time when the gift arising by implication should spring into being, and the payment is directed in the subjunctive mood, which is in keeping with the other *indicia* of a contingency.

Distribution will be awarded to those who answer the description of being the next of kin of the testatrix on Dec. 2, 1921, the date of the death of the last life-tenant. . . .

And now, April 4, 1922, the account is confirmed *nisi.*

NOTE 1.—To the above adjudication exceptions were filed, which were subsequently dismissed by agreement.