## Carson's Estate.

The facts appear from the adjudication of

GEST, J., Auditing Judge.—Michael H. Carson died on August 1, 1919, leaving a widow, Julia T. Carson, and a will admitted to probate on August 14, 1919, when letters testamentary were granted to the present accountants.

By the third paragraph of his will, the testator provided as follows: "As to all the rest residue and remainder of my estate, real, personal and mixed, of whatsoever kind and wheresoever situate of which I may die seized and possessed or to which my estate may be entitled, I give, devise and bequeath unto my Executors hereinafter named to hold the same in Trust, with power and authority to convert any portion of the whole thereof into cash and invest and reinvest the same in good legal securities and to pay the net income arising therefrom unto my said wife Julia T. Carson semi-annually during the full term of her natural life, and upon the decease of my said wife Julia T. Carson, I order and direct my said surviving Executors and Trustees to divide my estate among my children Florence Kugler, wife of Wright Kugler, James P. Carson and Horace H. Carson and the lawful issue of any of them who may then be deceased having left such issue share and share alike absolutely, such issue of any deceased child or children taking however only such part or share thereof as his her or their deceased parent or parents would have taken or been entitled to had he she or they been living. . . ."

The copy of the will certified by counsel omits the words "in Trust" and also the word "them" in the phrase "the lawful issue of any of them who may then be deceased."

This account is filed by reason of the death of Julia T. Carson on January 25, 1931, when the trust for her terminated, and the estate is distributable under the above provisions of the will.

The three children of the testator survived him, and James P. Carson and Horace H. Carson are living. Florence C. Kugler died on July 31, 1930, without issue, and Wright Kugler, her husband, is stated to be executor of her will.

Wright Kugler, as executor, claimed one-third of the estate, on the ground that the gift in remainder to Florence C. Kugler was vested, and James P. Carson and Horace H. Carson, the two surviving children of the testator, claimed to be entitled to the entire estate in equal shares, the argument of their learned counsel being based upon the propositions that the direction to divide the estate on the death of the widow constituted the gift, that the gift in remainder was contingent and that only the children who survived the life tenant were entitled to take.

Rosengarten *v.* Ashton, 228 Pa. 389, was relied upon, in which Smith on Executory Interests, § 314, was quoted as follows: "Where there is no gift but in a direction to pay or transfer or divide among several persons, at a future period, though the future period is annexed to the payment, possession or enjoyment, yet it is also annexed to the devise or bequest itself. For, in this case, the direction to pay or transfer or divide, constitutes the devise or bequest itself; and, therefore, the vesting in interest is postponed, and not merely the vesting in possession or enjoyment."

In commenting upon this rule, as stated in Smith on Executory Interests, the majority of this court in Buckman's Estate, 13 D. & C. 653, says: "It will, however, readily be perceived from a consideration of the context and of the cases cited by Mr. Smith that the contingency was inferred not merely from the direction to pay or to divide, but upon some language in the wills construed which indicated that the payment was to be made only upon the devisee's attaining a certain age or the like. See Leake *v.* Robinson, 2 Meriv. 363; Murray *v.* Tancred, 10 Simons, 465, and Sansbury *v.* Read, 12 Ves. 75 (said by Jarman to be an obscure will). The above remark of Mr. Smith does not seem to be intended as a general canon of construction. And why should it be? What substantial difference is there between a devise after a life estate to the testator's children (which is clearly vested) and a direction that the estate should be divided among them?"

That the rule is very artificial has often been noted. Thus, in Man's Estate, 2 Dist. R. 830, reversed in 160 Pa. 609, Judge Ashman, whose dissent in this court was sustained by the Supreme Court, said in terms: "A man cannot give an interest in his estate, short of the whole, without dividing the estate; and a direction to divide, either in the present or the future, would, by most testators, be regarded as one and the same thing with a direct gift. In the language of the Lord Chancellor, in Mackell *v.* Winter, 3 Ves. Jr. 543, it is a rule 'that one meets with in many cases, and which never is treated with great respect.' The single question here, as in every case where the income of a fund is given for life, and at the death of the first taker, the fund itself is given to another, is whether it anywhere appears in the will that the gift of the capital was intended to be deferred until the determination of the life estate." And the Supreme Court said: "The rule is conceded that where there is bequest in the form of a direction to pay, or pay and divide 'from and after' the happening of any event, 'then the gift being to persons answering a particular description, if a party cannot bring himself within it he is not entitled to take the benefit of the gift. There is no gift in these cases except in the direction to pay, or in the direction to pay and divide. But if upon the whole will, it appears that the future gift is only postponed to let in some other interest, or, as the court has commonly expressed it, for the greater convenience of the estate, the same reasoning has never been applied to the case. The interest is vested notwithstanding, although the enjoyment is postponed:' Packham *v.* Gregory, 4 Hare, 398. Upon the whole of this will, it is apparent that the interest of the children was simply postponed to let in their mother's."

It appears to the Auditing Judge that in all the cases cited by counsel where the rule has been followed, there has been something else in the will to denote a contingent gift. Thus in Rosengarten *v.* Ashton, the direction was to pay over and distribute among all the grandchildren and the issue of such as might be deceased, such issue to take the share the parent would have taken if living at the death of the last surviving child. This was a gift to a class, which could not be determined until the period fixed by the will. In the present case, the three children are referred to *nominatim.*

In McKee's Estate, 82 Pa. Superior Ct. 407, and McKee's Estate, 198 Pa. 255, the court found enough in the will to show that the "heirs" of the testator, among whom the estate was to be divided, should be ascertained as of the death of all the annuitants. In Alburger's Estate, 30 Dist. R. 301, 274 Pa. 15, the will directed the trustee on the death of the widow of the testator "to divide the residuary estate to and among my surviving brothers and sisters and the issue of such of my brothers and sisters as may be deceased." It seemed clear to the present Auditing Judge, in 30 Dist. R. 301, that the remainders given were contingent upon survivorship, and a similar explanation may be offered of Evans's Estate, 25 Dist. R. 117, affirmed in 264 Pa. 357.

Rosengarten v. Ashton, 228 Pa. 389, has been cited in numerous subsequent decisions, and in several of them has been distinguished and explained. I shall refer to some of them. In Stocker's Estate, 260 Pa. 385, where the opinion of this court was approved by the Supreme Court, the testatrix directed that her property should be divided at the death of her last unmarried sister, and the legacies were held to be vested. In Marshall's Estate, 262 Pa. 145, the testamentary direction was "to pay" $6000 to a grandson on the death of his father, the life tenant, and it was held that the grandson had a vested interest. In Groninger's Estate, 268 Pa. 184, the first paragraph of the syllabus reads: "Two children surviving a testator take a vested remainder under his will giving a life estate to testator's wife, in all his property, with a provision that 'at her death the estate shall be divided equally between my children, if any living, if none, to my nearest heirs, all my property . . . at the time of my death.'" And the third paragraph reads: "What the testator had in mind and intended to provide for was an equal division of his estate between the two children, and also postponement of actual distribution in order to let in the life estate of the mother." And Mr. Justice Moschzisker cited Jennings's Estate, 266 Pa. 60, and Marshall's Estate, 262 Pa. 145, and said: "Of course, where a will sheds no light upon the subject of the testator's intent—as to the vesting of remainders—other than that shown by a direction to pay or divide the principal at a designated future time, and the gifts in remainder are implied solely from the 'direction to pay,' such gifts are 'necessarily inseparable' from the direction, and 'partake of its quality, insomuch that, if the one is future and contingent, so must the other be:' Moore v. Smith, 9 Watts 403, 407. However, in Man's Est., 160 Pa. 609, 612, 613 (cited in Rosengarten v. Ashton), where the bequest was to 'divide' the principal at the death of the life tenant, we held remainders thus created to be vested, saying: 'where there is a bequest in the form of a direction to pay, or pay and divide, "from and after" the happening of any event,' without more, the remainder is usually accounted contingent: 'but if, upon the whole will, it appears that the future gift is only postponed to let in some other interest, or, as the court has commonly expressed it, for the greater convenience of the estate . . . , the interest is vested notwithstanding, although the enjoyment is postponed.'"

And in Murphey's Estate, 276 Pa. 498, where the testator directed his estate to "be divided and distributed among and between my legal heirs," Mr. Chief Justice Moschzisker held that the heirs of the testator as of his death took vested interests, saying (page 502): "The postponing payment of the principal of his residuary estate was evidently intended for the purpose of carrying out testator's scheme to create a trust to protect the estate, and facilitate the distribution of income therefrom, throughout the lifetime of his children; it was not on account of the character of those who ultimately were to receive such principal. Hence, the rule in Rosengarten v. Ashton (228 Pa. 389) does not apply: see Groninger's Est., 268 Pa. 184, 191."

Being of opinion that Rosengarten *v.* Ashton, 228 Pa. 389, does not apply to this case, it is clear that the three children, Florence, James and Horace, had vested remainders to come into possession after the death of their mother, Julia. The testator, however, adds: "and the lawful issue of any of them who may then be deceased having left such issue share and share alike absolutely, such issue of any deceased child or children taking however only such part or share thereof as his her or their deceased parent or parents would have taken or been entitled to had he she or they been living."

I am equally clear on this branch of the case, that the remainders so given were vested, subject only to be divested in favor of the issue of any of the children who may have died leaving issue. This cannot be doubted in view of Carstensen's Estate, 196 Pa. 325, a case that has been so frequently followed that it would be tedious and unnecessary to refer to all the decisions. I mention, however, Massey's Estate, 235 Pa. 289, Neel's Estate, 252 Pa. 394, and Jennings's Estate, 266 Pa. 60. The gift in favor of the issue of deceased children who have issue does not affect the shares of the children who died without leaving issue. See Buckman's Estate, 13 D. & C. 653.

The codicil to the will throws some additional light upon the testator's meaning. In that the testator says: "In addition to the provision I have made in my last Will for my daughter, Florence C. Kugler, I give to my said Daughter, Florence C. Kugler, in case she is living at the time of the final distribution of my Estate, as provided for in my Will, a sum of money equal to the sum as commission or otherwise my Son, James P. Carson, shall receive for his services as Executor of my Estate, which sum I direct my Executors or Trustees to pay when my Estate is finally distributed as aforesaid." This shows clearly that the testator knew how to make a legacy contingent when he wanted to, as he uses the words "in case she is living at the time of the final distribution of my Estate," which, of course, means the death of his widow. He intended by his will and codicil to give each of his three children, when his wife died, an equal share of his estate, and if any were deceased, leaving issue, his or her issue should take that share by substitution, and, in addition, he gave to Florence, in case she was actually *in esse,* an additional legacy. If there be added to the above considerations the usual presumption that the law favors vested rather than contingent legacies, especially where the testator is providing for his children, I have no difficulty in arriving at the conclusion that the executor of Florence C. Kugler is entitled to her share of the estate.

*W. H. G. Gould* and *Richard K. Stevens,* for exceptants.

*Byron Hancock,* contra.

VAN DUSEN, J., November 9, 1931.—Testator gave his estate in remainder, after an intermediate life estate, in trust "to divide" the same among his children by name, "and the lawful issue of any of them who may then be deceased having left such issue," such issue to take the share which the deceased parent would have taken "had he she or they been living." The use of the word "then" makes it perfectly clear that those children who die during the life estate leaving issue lose their rights, which are given to their issue by substitution. As to them, the gift is expressly made contingent on survivorship to the time of distribution. But as to those children who die during the life estate leaving no issue, no such contingency is expressed; and, unless one is implied, their interests pass to their personal representatives. The contingency in the one case is not to be carried by implication into the other. In all respects, except the use of the verb "divide," this case is like

Carstensen's Estate, 196 Pa. 325. See, also, Buckman's Estate, 13 D. & C. 653.

It is argued that the use of the word "divide" carries an implication of such a contingency, citing Rosengarten v. Ashton, 228 Pa. 389 (in which the words were "pay over and distribute"), and the famous passage from Smith on Executory Interests, § 314, therein quoted. In Buckman's Estate, supra, Gest, J., for the court en banc, fully expressed the reasons for regarding that view as discredited, and he has repeated those reasons in the adjudication in this case. We see no implication that the beneficiary must survive to receive the gift in person, whether the disposing verb be "pay," "divide," "transfer," "give," "bequeath," "distribute" or any other like word, unless there be something else in the will by which the word is to be so interpreted.

The exceptions are dismissed and the adjudication is confirmed absolutely.