## Rupp *et al. versus* Eberly *et ux.*

1. A testator devised to Mary, the daughter of his daughter Elizabeth, a lot of ten acres; and further devised : "It is my will that in case my said daughter Elizabeth should happen to have more lawful issue, then it is my will that the whole of my real estate shall be equally divided among my grandchildren of my said daughter Elizabeth and their heirs for ever. Provided, that in case of more issue, I direct that all my real estate be valued, and my said granddaughter Mary shall hold and possess said ten acres as part of her legacy." Elizabeth died without other issue. *Held*, that this was an executory devise to his grandchildren, on the contingency of there

| | |
|---|---|
| 79 | 141 |
| 126 | 241 |
| 79 | 141 |
| 135 | 443 |
| 79 | 141 |
| 147 | 387 |
| 79 | 141 |
| 154 | 190 |
| 79 | 141 |
| 159 | 227 |
| 79 | 141 |
| 200 | 10 |
| 79 | 141 |
| 202 | ³394 |
| 79 | 141 |
| 207 | ³552 |

[Rupp *v.* Eberly.]

being others, and there being none, he died intestate as to all his real estate but the ten acres.

2. Devises limited in clear and express terms of contingency do not take effect unless the events upon which they are made to depend happen.

3. An heir can be disinherited only by express devise or by necessary implication of such strong probability, that an intention to the contrary cannot be supposed.

4. General words of the testator's wish to dispose of all his estate, although to be carried to the devising clauses to illustrate his intention, will not of themselves create a fee nor carry an estate clearly omitted.

5. French *v.* McIlhenny, 2 Binney 13, followed.

May 29th 1875.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Cumberland county :* Of May Term 1875, No. 73.

This was an action of ejectment for one acre of land in Hampden township, brought to the August Term 1872 of the court below, by Christian Eberly and Mary his wife, in her right, against Jacob Rupp and J. S. Rupp.   The defendants were in possession under a lease from Elizabeth Buttorff.   She was dead, and they defended under her, claiming that she owned the premises as the heir of her father, John Rupp.

John Rupp died January 13th 1834, having made a will, in which he directs as follows : " As to such worldly estate wherewith it hath pleased God to intrust me, I dispose of the same as follows, viz.: * * * I give and bequeath my house and ten acres of land, whereon my son-in-law, Henry Buttorff, now resides, with the appertenances to my grandchild, Mary Buttorff, daughter of Henry Buttorff, intermarried to my said daughter Elizabeth. * * * And as soon as my said granddaughter Mary shall be in a capacity to take care of said house and ten acres of land, I order and direct my executor, hereinafter named, to deliver the same unto her ; as, also, all moneys arising from the sale of personal property, bonds and cash, and other outstanding debts.   Item. It is my will that in case my said daughter Elizabeth, intermarried as aforesaid, should happen to have more lawful issue, then, and in such case, it is my will that the whole of my real estate shall be equally divided to and among all my grandchildren of my said daughter Elizabeth, and their heirs and assigns for ever.   Provided, nevertheless, that in case of more issue, I direct that all my real estate be valued and appraised, and my said granddaughter Mary shall hold and possess said ten acres of land as part of her legacy."

He died seised of the ten acres devised to his granddaughter, Mary Eberly, and a farm, of which the premises in dispute are a part.   Elizabeth Buttorff was the only child and heir of the testator.   She entered upon the farm and leased the acre in dispute. Her husband died in 1864.   She died in 1873, leaving Mrs. Eberly her only child and heir, never having had any other children.

[Rupp *v.* Eberly.]

The defendants were in possession at her death and at the bringing of the suit, claiming to hold under a lease from her.

The main question in the case was: To whom did the farm pass on the death of the testator? Whether it was devised to Mrs. Eberly, or whether it was undisposed of by the will, and passed to Mrs. Buttorff as his only heir at law.

There were collateral questions raised on the trial below, which were not considered in the Supreme Court. The court below (Junkin, P. J.) charged with reference to the clauses of the will given above: "This is not a very explicit devise, but it is an inference which seems inevitable, that testator intended to devise his real estate to Mary, his granddaughter, in fee, subject to open and let in after-born children of her mother, should any be born—but in fact none were, and hence Mary got the whole; and we instruct you that she had title under the will of John Rupp to the land in dispute, and is entitled to recover, unless the mother, Elizabeth Buttorff, has acquired title otherwise than as heir-at-law of her father, the testator."

The verdict being for the plaintiffs, and the defendants having taken a writ of error, this instruction of the court was assigned for error.

*L. Todd* and *W. H. Miller*, for plaintiffs in error.—To disinherit the heir-at-law the language of a devise must be clear and unambiguous: 1 Jarman on Wills, ch. xix., p. 466, note *a*, pp. 467, 469; ch. xviii., p. 464; Hartof's Case, Cro. Eliz. 243. Devises limited on a contingency do not take effect unless the contingent event happens: 1 Jarman on Wills 642, 643. An *implication* in a devise to disinherit the heir must be so strong that an intention to the contrary cannot be supposed: Bender *v.* Dietrick, 7 W. & S. 284; French *v.* McIlhenny, 2 Binn. 19; McIntyre *v.* Ramsey, 11 Harris 320; Cassell *v.* Cooke, 8 S. & R. 289; Busby *v.* Busby, 1 Dall. 226.

*S. Hepburn, Jr.*, and *S. Hepburn*, for defendants in error.— The expression in the will that the testator wished to dispose of his whole estate makes it apparent that he did not intend to die intestate: Schriver *v.* Meyer, 7 Harris 87; Wood *v.* Hills, Id. 513. The grandchild living at his death took a fee subject to be opened to let in any that might thereafter be born: 2 Powell on Devises 161; Hawkins on Wills 68–71; 2 Jarman on Wills 55–57; Pemberton *v.* Parke, 5 Binn. 601; Wager *v.* Wager, 1 S. & R. 374; Minning *v.* Batdorff, 5 Barr. 503; Haskins *v.* Tate, 1 Casey 249; Huss *v.* Stephens, 1 P. F. Smith 282.

Mr. Justice WOODWARD delivered the opinion of the court, October 18th 1875.

John Rupp died in January 1834, leaving one daughter, Elizabeth, wife of Henry Buttorff. By his will, which had been executed in May 1833, he devised his house and ten acres of land to his granddaughter, Mary Buttorff, the only child of his daughter Elizabeth. The concluding clause of the will was in the following words: " It is my will that in case my said daughter Elizabeth should happen to have more lawful issue, then and in such case * * * the whole of my real estate shall be equally divided to and among all my grandchildren of my said daughter Elizabeth, and their heirs and assigns for ever: provided, nevertheless, that in case of more issue, I direct that all my real estate be valued and appraised, and my said granddaughter Mary shall possess and hold said ten acres of land and premises as part of her legacy." This action of ejectment was brought to recover an acre of land belonging to the testator's estate, not included in the ten acres devised to the granddaughter, now Mrs. Eberly, one of the plaintiffs below. The defendants were in possession as lessees of Mrs. Buttorff and her husband. In the charge to the jury the court said: " This is not a very explicit devise, but it is an inference which seems inevitable, that the testator intended to devise his real estate to Mary, his granddaughter, in fee, subject to open and let in afterborn children of her mother, if any be born; but in fact none were, and Mary got the whole."

The maxim is imbedded in the common law that an heir can be disinherited only by express devise or necessary implication, and that implication has been defined to be such a strong probability that an intention to the contrary cannot be supposed: 1 Jarman on Wills 465. That this rule has been uniformly recognised in Pennsylvania is proved by all the cases in which the point has been discussed. In French *v.* McIlhenny, 2 Binn. 13, it was said, that it " should be observed with more strictness here than in England, because our laws of inheritance are more equal," and this language was quoted with the approval of Lewis, J., in McIntyre *v.* Ramsey, 11 Harris 317. In the present case there is no room for construction. No words were used by the testator that could be so stretched as to create the implication of an intention to give any interest in his general real estate to his granddaughter, except upon the single contingency that her mother should give birth to other children. It is true, if the contingency had happened, the effect would have been entirely to disinherit Mrs. Buttorff, although it may well be doubted whether any such purpose was designed. The contingent clause in the will proves that the granddaughter, as such, was not intended to be the principal beneficiary of the testator. Its object was to protect all the children of his daughter equally. It may be that the intention was imperfectly expressed, or that the effect of the provision was imperfectly understood. This, however, is mere matter for conjec-

[Rupp *v.* Eberly.]

ture.   The will is to be taken as it stands, and read in the light of existing facts.   Apart from the concluding clause, it gave to Mary the ten acres, and left the general real estate untouched. And with the concluding clause, it left it equally untouched except in the contingency that Mrs. Buttorff "should happen to have more lawful issue."   Providing for Mary to the extent of the particular devise, the testator, as to the residue of his property, seems to have rested on the conviction that the interests of an only daughter could be safely intrusted to her mother's hands.   This question is free from the embarrassment arising from a devise of a particular estate in land followed by an ulterior contingent limitation.   Here the subject-matter of the gift was referred to only in the provision made for its disposition on the occurrence of the contemplated event then possible, but which has never happened. In other words, this was an executory devise of the simplest kind —one defined as resulting " when a man devises a future estate to arise upon a contingency, and, till that contingency happens, does not dispose of the fee simple, but leaves it to descend to his heirs-at-law :" 2 Bl. Com. 173.   The view contended for by the plaintiffs below could be sustained by no construction of any language which the testator used.   It would require the interpolation of fresh testamentary words.   And courts are not permitted to give effect to the will of a testator contrary to the plain and obvious import of the terms used by him, upon a mere conjecture as to his intention : 1 Bail. Eq. 298.   Nothing is more definitely settled than the principle that devises limited in clear and express terms of contingency do not take effect unless the events upon which they are made dependent happen : 1 Jarm. on Wills 744. It was only on the contingency of the birth of other children of Mrs. Buttorff that the general real estate was devised.   As to that estate, the contingency having failed, the testator died intestate.

It is urged that the expressed intention of the testator to dispose of his "worldly estate" is to be taken, in connection with the devising clauses, as implying a purpose to vest all his lands in his granddaughter.   It might be a sufficient answer to this suggestion, to say, that every implication from the use of the introductory words in the will is adequately met by the executory devise in favor of the grandchildren on the contingency for which the will provided.   But the use of general ·words like these, though always to be carried down to the devising clauses in order to illustrate the testamentary intention, do not of themselves create a fee, and will not carry an estate that is clearly omitted : Busby *v.* Busby, 1 Dall. 226 ; Cassell *v.* Cooke, 8 S. & R. 289.

With this view of the main dispute, discussion of the subsidiary questions presented by the record would be supererogation.   No

29 P. F. SMITH—10

[Rupp *v.* Eberly.]

salutary end would be gained by another trial, and it is proposed
to close this litigation here and now.          Judgment reversed.