# McKee's Estate.

*Wills—Interpretation—Heirs—Remainders—Vested.*

A testator after giving annuities to his sisters and brother and to his son and daughter, directed that "On the death of my heirs herein named all property and Bank Stocks to be sold and divided among all the heirs."

*Held,* that the words "heirs herein named" referred to the annuitants and that on the death of all of them the estate vested in and was distributable to the heirs of the testator, who were the children of a deceased daughter.

Argued November 12, 1923.   Appeals, Nos., 87, 88, 89, 90, 91 and 92, April T., 1924, by Elizabeth R. Anderson, et al., from decree of O. C. Allegheny Co., Dec. T., 1922, No. 223, dismissing exceptions to adjudication in the Estate of David McKee, deceased.   Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.   Affirmed.

Exceptions to adjudication.   Before MILLER, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the exceptions.   Exceptants appealed.

*Error assigned* was the decree of the court.

*A. DeVoe P. Miller,* and with him *Dunn & Moorhead,* for appellants.—The testator intended by the language of his will to convey the residue of his estate to the collateral as well as the lineal heirs: Huber's App., 80 Pa. 348; Porter's App., 45 Pa. 201; McCrea's Est., Eppelsheimer's App., 180 Pa. 81; Ashton's Est., 134 Pa. 390; Clark v. Scott, 67 Pa. 446.

*Frank B. Ingersoll,* and with him *Harry J. Graham, Allen T. C. Gordon* and *Gordon & Smith,* for appellees, cited: McKee's Est., 198 Pa. 255; Bender v. Diterick, 7 W. & S. 284; Rupp v. Eberly, 79 Pa. 141; Faulstich's Est., 154 Pa. 188; Corr's Est., 202 Pa. 391.

PER CURIAM, December 10, 1923:

These appeals are from the decree of the Orphans' Court of Allegheny County, awarding the estate of the decedent to the children of Fannie K. Winfield, the only lineal descendants of David McKee. Appellant states the questions involved as follows:

1. Whether the auditing judge did not err in finding as a matter of fact that Fannie K. Winfield was a daughter of James G. McKee, and consequently her children entitled to inherit as the great-grandchildren of David McKee, the testator.

2. Whether the language of the will of David McKee, the testator, did not include collaterals and lineals as residuary legatees.

3. Whether one-half of the estate of the testator, David McKee, did not vest in his son, James G. McKee, at the time of the death of the testator and not at the time of the death of the last annuitant, and the said James G. McKee could not dispose of the same by his will. The first question was not pressed because appellant conceded that the question had been decided adversely to and was res adjudicata as to all the appellants under the opinion and decree of the late President

Judge OVER of the court below. The will to be construed provided as follows:

"April 2nd, 1886.

"I, David McKee of the 18th Ward City of Pittsburgh being of sound mind and memory do make this my last will and testament. First I give & bequeath to my grandson John D. McKee all my Homestead on which I now live Houses & grounds fourteen acres more or less bounded by lands of John Herron Stanton Ave. &c. the same to be his forever for his own proper use but not to be sold until he is thirty years of age but he to have the use & income from the time of my decease. I appoint Harry Mason Guardian until he is of age he and his family to live on the place until that time.

"To my sisters Nancy & Margaret & Brother John three hundred Dollars per year during their lives to be paid from the time of my decease semi-annually that will be One Hundred dollars each one per year.

"To my daughter Bell McCroskey Fifty Dollars per month during her life to my son James McKee Fifty Dollars per month during his life & the house now occupied by him free of rent.

"I appoint as executors to this my last will & testament my brother Jas. McKee & Revd. Sands Pastor of U. P. church on 44th St. City Pittsburgh.

"On the death of my heirs herein named all property and Bank Stocks to be sold and divided among all the heirs. Should my Grandson John D. McKee die before he is thirty without leaving any heirs his estate to be divided pro ratio among the heirs.

"I give in addition to my Grandson John D. McKee one-half of the income of my Bank Stock in the Bank of Commerce to my brother James McKee of the twelfth Ward City of Pittsburgh the other half of the income from this same stock in the Bank of Commerce Wood & Sixth St. the stock is seventy shares.

"The balance of the income after paying these legacies and taxes to be spent in keeping up the houses in good

condition should there be more than will do this the
money to be placed in bank to accumulate."

The following quotation from the opinion of President
Judge MILLER of the court below contains all that need
be said in affirming:

"It will be observed that the testator named the fol-
lowing persons as beneficiaries in different degrees in
his estate, to wit, his grandson, John D. McKee, who
was given the homestead, fourteen acres of land, and the
income from half of his bank stock, and that John D.
McKee died before arriving at the age of thirty, intestate
and without issue. It will be observed, further, that
testator named his sisters Mary and Margaret and his
brother John as annuitants of $100 per year during their
lives, his daughter, Bell McCroskey, and his son, James
G. McKee, as annuitants of $50 per month during their
lives; and further, that he gave to his brother, James
McKee, the half of the income of the bank stock, for how
long is not stated, and that the ultimate disposition of
his estate must be ascertained from the following lan-
guage: 'On the death of my heirs herein named all
property and bank stock to be sold and divided among
all the heirs.'

"The gift over must be found in the direction to divide;
this division could not take place until the death of his
heirs named in his will. This was the construction
placed upon his will by the Supreme Court in this case
of McKee's Est., 198 Pa. 255, where James McKee, tes-
tator's brother, and the father of the collaterals now
claiming a share, was the actor in an application for a
decree terminating the trust. The opinion of Judge
OVER, late President Judge of this court, which was af-
firmed per curiam, concluded 'that the testator intended
to give the residue of his estate upon the death of all the
annuitants to such persons as then answered to the de-
scription of his heirs,' and refused the petition to declare
the trust terminated. The opinion refers to the case of
Yost v. The Dwelling House Insurance Company, 179

Pa. 381, where the construction of this will as to the
interest of John D. McKee was before the Supreme
Court, and in which the court said, inter alia, 'It is
quite clear that by "my heirs herein named" the testator
meant the annuitants.' The opinion of Judge OVER
goes on to say, 'The testator intended then that distri-
bution should not be made until after the death of his
two children, his sole heirs at the time of his death who
were also annuitants (here referring to Isabella Mc-
Croskey and James G. McKee)......He gave them
directly the annuities only, and although he would ex-
pect naturally that they would survive their aunts and
uncles, the other beneficiaries, he expressly provided that
the annuities should be paid to his children during their
lives, and that conversion and distribution of his estate
should not be made until after their death......and
that his heirs were to be ascertained as of the period of
distribution.'

"It must further be observed that James McKee was
not an annuitant in the class and in the sense that
testator made his sisters, his brother, his daughter, and
his son annuitants; James McKee was given the income
of one-half of certain bank stock only, and fixed no time.
He was not an annuitant.

"Whom had testator in mind as the heirs when final
distribution should be made, as between the descendants
of his children, testator's lineal descendants, and the
collateral descendants of his brother James, it being
admitted that neither testator's two sisters nor his
brother John had lineal descendants? In what sense
did he use the words 'my heirs herein named'? Cer-
tainly only in the technical sense recognized by the law
could he have intended those who under the law were
his heirs, to wit, his lineal descendants. The 'heirs
herein named' referred only to the annuitants. The
heirs to inherit finally were those fixed by law. He did
not say that his estate shall be divided among his heirs
herein named, admitting that James McKee as a legatee

was an heir. He did say that upon the death of his heirs herein named his property shall be divided among all the heirs, but he did not say that all the heirs who shall be the beneficiaries of his property were the heirs above named, being the annuitants, thus placing the collaterals as heirs on an equal footing with the lineals.

"To a very large extent the question as to the parties entitled to take has been determined by the Supreme Court in the two cases, both being this estate, already referred to, for in Yost v. The Dwelling House Insurance Company, supra, the Supreme Court, having this clause of the will before it, says, 'It is quite clear that by "my heirs herein named" the testator meant the annuitants, and that "all the heirs" included John D. McKee, and it is equally clear that in McKee's Est., 198 Pa., supra, only on the death of the last annuitant could the persons be ascertained who were entitled to take,' from which it followed that the annuitants themselves could take nothing excepting the annuity, and that 'all the heirs' must be those in the legal, technical sense contemplated by the law, who were first in the line of direct descent, as against any so-called heirs in a collateral line.

"Yost v. McKee, supra, decided that 'my heirs herein named meant the annuitants,' and that 'all the heirs' included John D. McKee, lineal grandson; that when testator said that if John D. died without heirs he meant issue, lineal heirs; he knew that John D. had and would leave collateral heirs. He did not intend to include them. No one questions that between lineals and collaterals the former take, nor is it questioned that the heir is not to be disinherited unless by express devise or clear implication: Bender v. Diterick, 7 W. & S. 284; Rupp v. Eberly, 79 Pa. 141.

"The question at issue was again practically disposed of by this court at No. 300, January Term, 1917, where the issue arose on an appeal from the register in the granting of letters of administration d. b. n. c. t. a. on this testator's estate; there, Judge Over, speaking for

the court in banc, decided that as between the lineal descendants of testator, to wit, his daughter, Mrs. McCroskey, and the collateral heirs descending from James McKee, the brother of testator, the latter were not entitled to the grant of letters, the court saying, inter alia, 'When the letters were issued to the appellee, Mrs. Winfield, testator's granddaughter, was living, and if the trust created by the will had then terminated the whole residue of the estate would have vested in her......
After her death the guardian of her minor children became a party respondent to this appeal and filed an answer ratifying the appointment of the appellee. We thus have the appointment made by the register on the nomination of the person primarily the only residuary legatee and ratified since her death by the guardian of her minor children, who would take the residue if the trust terminated now.' The court further said that 'the appellant (there) would not take as residuary legatee under the will unless he survived the two living beneficiaries named in it and also the five great-grandchildren of testator and the descendants of any deceased.' No appeal was taken from this decision, and the conclusion of the court in banc there expressed continues to be the law of this court on the issue now raised.

"The contention very recently urged, to wit, that the devisees under Bell McCroskey's will are entitled to share in this estate, cannot be maintained. In effect it has been decided adversely in McKee's Estate, supra, since it was there found that Isabella McCroskey had no interest in her father's estate other than the monthly payment of $50; that there was no vested estate in Isabella McCroskey at the time of testator's death, since vesting was postponed until the time of division; that the gift to the heirs was in the direction to divide; that, as such the estate was contingent and not vested, as held in Battenfield v. Kline, 228 Pa. 91, citing Moore v. Smith, 9 Watts 403, to which may be added the case of Rosengarten v. Ashton, also found in 228 Pa. 389.

"Notwithstanding the able and elaborate briefs furnished by the learned counsel for the residuary legatees of Isabella McCroskey, in which it is attempted to show that this court was wrong in the construction of this will both in McKee's Est., 198 Pa. 255, and at No. 300, January Term, 1917, the reasoning is not convincing; the conclusions there announced are still adhered to.

"But, irrespective of the persuasive guides contained in the opinions in both of the cases cited, and assuming that this case was never before the court previously, nor had the question at issue been appealed to the Supreme Court, and that the construction of this will under the facts as now disclosed was here for the first time, it seems clear that an analysis of the language of the will, the character of the estate to be carried out until the death of the last of the annuitants, the direction then to sell and divide created a contingent estate, vesting postponed until the time when division should take place. This time is now, since all the annuitants are dead, and as the legitimate lineal descendants of Fannie K. Winfield, who was the legitimate lineal descendant of David McKee, are the sole heirs, it follows that the estate must be awarded to them through their guardian."

The decree is affirmed.