# McCrea Estate

146

Before Sinkler, P. J., Klein, Bolger, Hunter and Lefever, JJ.

*William P. Heuchert, Louis Jacobs, Thomas W. Weary, Maurice Heckscher, Walter Y. Anthony, W. LeRoy McKinley, Frederick R. Drayton, Jr., Roland C. Heisler,* and *Drinker, Biddle & Reath,* for exceptants.

*William Carson Bodine, Pepper, Bodine, Stokes & Hamilton, Sidney L. Wickenhaver, William H. Lathrop, Montgomery, McCracken, Walker & Rhoads, Cuthbert H. Latta,* and *Barnes, Dechert, Price, Myers & Clark,* contra.

The facts appear from the following extracts from the adjudication of

SINKLER, P. J., Auditing Judge.—Charles McCrea died June 24, 1883, and the trust arises under his will, by which he gave his residuary estate to his trustee, in trust for his wife and two daughters for life, and further provided for distribution of the principal on their deaths.

The reason for filing the account, as set forth in the statement of proposed distribution, is the death of Nathalie Denby McCrea, also known as Nathalie Denley McCrea, the last surviving life tenant, on October 30, 1950. . . .

The sixth paragraph of decedent's will is now operative. By it he provided that "In the event of the death of my wife and of both of my children without children or descendants of children, then I direct my said trustees that they divide my estate into three equal shares and transfer and convey one such share to my sister Anne P. Wirgmann or if deceased to her descendants, another such share to my sister Mary M. Smith or if deceased to her descendants, and the remaining such share unto and among the children of my late brother Henry McCrea and their descendants, 'per stirpe'."

It is noted that this is the spelling and the punctuation of the original will which was probated.

It is unnecessary to set forth the family history of decedent, as counsel for the accountant has submitted a chart of the family tree which contains all pertinent details. . . . For the present, it is sufficient to state the following pertinent details relevant to the family lines of decedent and of Anne, Mary and Henry, named in the will.

The line of decedent is extinct, as both daughters died without issue, the last dying October 30, 1950.

The line of Anne, who died in 1887, is now represented by a granddaughter of Anne, Ethel .W. Stokes, and by two great-grandchildren of Anne, who are children of the same grandchild, now deceased, of Anne, namely, Atlee L. Wayne Wirgman Baulsir and Mary Elizabeth Wayne Birgman Kittelle.

The line of Mary was represented on the date of death of the last life tenant by a daughter of Mary, namely, Emily Stewart Smith. She died November 8, 1950, following the death of the last life tenant, so that the line of Mary is now represented by the estate of Emily Stewart Smith, deceased.

The line of Henry is extinct, as both his children died without issue. The last of his two children to die bequeathed his residuary estate to Matilda Whomsley, who now claims to represent the line of Henry.

The representatives of the lines of Mary and Anne contend that by the sixth paragraph of the will the interest of all distributees was conditional upon their surviving the death of the last life tenant, and that, accordingly, the representatives of those two lines are entitled to take the share distributable to those two lines to the exclusion of those members of those lines who had died before the termination of the trust. The representatives of the lines of Mary and Anne further contend that, as there is no descendant of the Henry line, the Henry share should be awarded to them on the theory that there was a class gift, by virtue of which they now have the right of survivorship.

The representative of the Henry line contends that the child of Henry last dying had such an interest in the Henry share that it was not defeated by that child's death prior to the termination of the trust, and that accordingly the Henry share passed by virtue of the residuary clause of that child's will to the present alleged representative of the Henry line.

The claim is also made by the next of kin of testator that all interest in the Henry share was defeated or divested by the death of his children before the termination of the trust, and that, as no provision was made by decedent for that contingency, the Henry share now passes by intestacy to the next of kin of decedent, determined as of the date of his death.

### 1. *"Descendants" as a Word of Purchase*

(a) *Factual Background of the Testamentary Disposition.*—Of great importance in determining the meaning of the words used by testator in writing his will is the factual situation existing when he made the

will. An examination of those facts is of assistance, because the court is better enabled to determine what testator had in mind and what he was seeking to do by the words of his will.

This is not a question of forcing the will into a construction suggested or made necessary by the facts as they developed subsequent to the death of testator. It is merely viewing the facts as they existed when the will was drawn.

Testator was married in 1865. He wrote his will in 1882. His two daughters were then minors. By contrast, his sister Anne was then 67 years old and his sister Mary was 60 years old. Each of them had a number of children, and one, a grandchild. Under these circumstances, it is most likely that testator contemplated that the gift of income to his wife and children would last for many years, and that the gift over to the collateral lines for want of children or descendants of his daughters would not occur, if at all, until a comparatively remote period, at which time it would be likely that his sisters, as well as his brother, would be dead, and that the substitutionary gifts would take effect as to the children or descendants of deceased children rather than as to the sisters themselves.

It is thus most probable that testator intended that the bequest by the sixth paragraph was to take effect with respect to any brother, sister, children or their descendants who were alive at the time when the event specified in that paragraph should occur, namely, the death of his wife and daughters without any surviving descendants.

(b) *General Meaning of "Descendants"*. — "Descendants" does not have the technical meaning of "heirs" or "heirs of the body". "At most, (it) is only the equivalent of 'issue' which, when used with reference to personalty, is a word of purchase": Penrose, J., in Waln's Estate, affirmed by the Supreme Court upon

the opinion of the lower court in 189 Pa. 631. See also Lee v. Sanson, 245 Pa. 392. "Descendants" has been held a word of purchase in these two cases and a word of limitation in Burkley v. Burkley et al., 266 Pa. 338. It is a term which does not have a fixed meaning but, as in the case of "issue", will be given such meaning as testator intended it to have. See Lippincott Estate, 349 Pa. 538; Butler Estate, 364 Pa. 279.

(c) *Exclusion of Estates of Deceased Beneficiaries.* —That decedent intended "descendants" as a word of purchase is deduced from the fact that he intended living persons to receive the estate. Thus, upon the death of his wife and children without children or descendants of children, testator makes the substitutionary gifts to collaterals. He does not make the gift to the estates of deceased lineals nor even confer upon them the power to appoint the principal. Moreover, he makes the gift by paragraph 6 to Mary, Anne and the two children of Henry. The fact that he does not include the estate of Henry, rather than the children of Henry, indicates that he did not intend the participation by Henry's estate, even if the sixth paragraph should take effect while Mary and Anne were living. There is little reason to believe that testator should then change his mind and intend that the estates of persons who had died before the termination of the life estates should share in distribution.

The exclusion of the estates of deceased persons is the ordinary intention of a testator. This is recognized in Laughlin's Estate, 336 Pa. 529, in which the court, referring to the Act of June 29, 1923, P. L. 914, which provides that in a gift to heirs following a life estate, the heirs shall be determined as of the termination of the life estate, stated (336 Pa. at 536):

". . . this Act does not apply to the interpretation of the will now in controversy, whose maker died in 1919, but it is here referred to as a legislative establishment

of a statutory presumption, and it is reasonable to believe that this presumption is 'a conclusion firmly based upon the generally known results of wide human experience'."

That interpretation which is most probable or likely naturally carries most weight in the interpretation of a will. This principle has been frequently recognized. See, for example, Fahey Estate, 360 Pa. 497; Riegel et al. v. Oliver et al., 352 Pa. 244; Mayhew's Estate, 307 Pa. 84.

(d) *Language of the Will; Anne and Mary.*—By the sixth paragraph of the will, decedent directed the division of his residuary estate into three shares, and the transfer of one of the shares to his sister "Anne . . . or if deceased to her descendants." A word of limitation is one which serves to define or set the boundary or limits to the estate of a donee or recipient of property. How can it be said that "descendants" sets the boundaries of the gift to Anne, when the term "descendants" does not come into play until Anne is deceased?

The testamentary intent is plainly that upon the extinction of the lineals, Anne, if living, should receive a one-third share. If the collateral line, as represented by Anne, should be extinguished to the extent that Anne should be already dead, then the gift should be given to a more remote member of Anne's collateral line. To hold that "descendants" is a word of limitation with respect to Anne, would, in effect, find words of limitation everywhere, and create a legal presumption which could be overcome only by an express declaration to the contrary.

A gift to Anne, with the substitution of descendants if she had died, is manifestly different from such situations as are present in the case of a gift to A scendants, or to A and his heirs, issue or descendants, for life, with remainders to his heirs, issue or de-

where there is no additional qualifying provision. It is not necessary to consider the legal significance of such other dispositions.

What has been said in respect of the collateral line of Anne is also true of the line of Mary, for the bequest is made in the identical language: "to . . . Mary . . . or if deceased to her descendants."

Before considering the gift to the collateral line of Henry, it is to be noted that the gifts made by paragraph 6 are modified by the phrase, "per stirpe". This appears at the very end of the sixth paragraph, and on the certified copy of the will submitted to the court is separated from the body of the sixth paragraph by a comma. The phrase, "per stirpe", appears in quotation marks in the will.

The fact that it is in quotation marks is interesting, as serving to indicate that testator knew that he was including a meaningful phrase. He also employed the same phrase in quotation marks in paragraph 4 of the will. In the early clause it is used to indicate a distribution by way of representation. There is no reason to believe that testator did not ascribe to it the same meaning in the sixth paragraph.

The separation of "per stirpe" in the sixth paragraph by a comma indicates that testator was qualifying the three preceding gifts and not merely that to the Henry line: Ritter's Estate, 53 D. & C. 318. As noted under heading 1(a), testator necessarily contemplated the possibility of future generations receiving the trust fund. This carried with it the obvious possibility of different generations within the same collateral line receiving a portion of the share of that line. The logical and orderly way of making distribution would be per stirpes. No reason appears why testator would wish to reject a stirpital distribution in the case of the children and the descendants of Anne

and Mary but insist upon such distribution in the case of the descendants of the children of Henry.

Even in the absence of the qualifying "per stirpe", it is to be noted that a gift to "issue" or "descendants" would be construed as calling for a stirpital distribution unless testator indicated otherwise: Mayhew's Estate, 307 Pa. 84.

(e) *Language of the Will: Henry Line.*—Under the preceding heading it has been concluded that "descendants", as used in the gifts to the Anne and Mary lines, is a word of purchase and not of limitation. Counsel for the Henry line contends that, independently of the conclusion reached in respect of those other two lines, descendants is a word of limitation in respect of the Henry line. This argument is based on the fact that testator stated, "unto and among the children of my late brother Henry McCrea and their descendants . . .", instead of following the pattern applied to the other lines of making the bequest to descendants conditional upon the death or absence of the initial takers of the share.

This argument fails to give full effect to the phrase, "per stirpe", which immediately follows the bequest to the Henry line. The complete text is: "the children of my late brother . . . and their descendants, 'per stirpe'." These words, "per stirpe", were held under heading 1(d) to apply to all three bequests made by the sixth paragraph. Certainly it applies with particular vigor to the bequest which immediately precedes those words.

Moreover, some meaning must be ascribed to that phrase. If per stirpes were used to mean only that the children and descendants of Henry receive the one-third share which Henry would receive, the phrase is unnecessary, since testator has expressly said that in bequeathing to them "the remaining such share". If "descendants" is deemed a word of limitation, so that

the clause would be in legal effect rewritten to read, "the children (in fee) 'per stirpe' ", the phrase would be meaningless, since a distribution per stirpes is meaningless as between those related to decedent in the same degree of consanguinity. It must be noted that in the first two bequests by the sixth paragraph testator was following a pattern of making a gift to the primary taker, and then making a substitutionary gift to descendants in the event the primary taker had died. What more logical than to intend that the one third which Henry would have received if alive should be given to his children, but that if they or either of them were dead, the share of the dead child or children should pass to those who at that time were descendants, distribution to be made among them "per stirpe"? Thus interpreted, and only thus interpreted, does the use of the words "per stirpe" have an independent and a rational meaning.

From the way per stirpes is used in paragraph 4 of the will, and from the fact that in paragraph 6 the residuary estate is expressly divided into thirds, it is apparent that when "per stirpe" is used at the end of paragraph 6, testator is referring to taking by right of representation rather than merely indicating a collective taking by families rather than individuals. See Corr's Estate, 338 Pa. 337.

It is held that, in order to give effect to every provision of the will, specifically to the phrase "per stirpe" at the end of paragraph 6, "descendants" must be interpreted as a term of purchase in respect of the Henry line, as well as the two preceding lines.

Because of the significance of "per stirpe", it is unnecessary to invoke the doctrine of Lippincott Estate, 349 Pa. 538, in order to hold that "and" in the Henry line gift to "children and their descendants" should be given the same meaning as "children or their de-

scendents". The effect of "per stirpe" is to replace the "and" by the phrase "or if dead to their" descendants.

In opposition to these conclusions, counsel for the Henry line cites Burkley v. Burkley et al., 266 Pa. 338. On page two of their reply brief it is stated, "We, therefore, boldly state that we can rest our entire case on the case of Burkley v. Burkley . . .". In the Burkley case, the court held that the phrase, "my children or their descendants absolutely and in fee", was to be interpreted as a bequest to children and descendants and that descendants was then to be interpreted as heirs of the body, or a word of limitation.

In the Burkley case the court stated:

"It is apparent testator did not intend by 'descendants' to designate a particular set of persons to take directly from him at a given time."

In the instant case, testator was designating a particular set of persons to take directly from him at the time when the contingency specified in the opening lines of paragraph 6 should occur. In the Burkley case the court continued: "[the testator] used the word [descendants] in the descriptive sense of 'heirs of the body' or 'issue' of his children." In the instant case, testator, in making bequests with respect to the shares of Anne and Mary is clearly contemplating persons who will be present to take the substitutionary gifts in place of the children of Anne and Mary. In paragraph 4 decedent specified descendants with the intention of designating those persons who were in existence at a specified time. The law will not lightly assume that a testator who consistently uses the term "descendants" as a word of purchase in paragraph 4 of his will, and in the first two of the three bequests made by the sixth paragraph of his will, has changed his intention and uses it as a word of limitation in making the third bequest of the sixth paragraph. In the absence of an express statement by testator that he has changed the

sense in which he has employed the word, the court will not assume that which he has not expressed.

In the Burkley case the court stated that its interpretation was "indicated by the next paragraph of the will, wherein testator provides for the event of his death 'without leaving issue' ". This basis for decision is lacking in the instant case.

In the Burkley opinion the court stated:

"The determination of the wife's life estate does not depend upon an uncertain event, and the remainder in the children is limited to ascertained persons in esse, it being 'certain to take effect in possession by enduring longer than the precedent estate'. . . . In the words of Judge Wessel of the court below: 'It is true the children are not to have the immediate enjoyment of the estate, that being deferred until the determination of the widow's interest, . . . but the time when it is to be enjoyed by the children depends upon a date certain to arrive . . .'."

In the instant case the gift to the sisters and brothers, and the children and their descendants, are all conditioned upon a contingency which might never have occurred, namely, the death of testator's wife and both of his children without children or descendants of children.

The language of the instant will, when viewed as a whole, is materially different from that in the case of Burkley v. Burkley. It is accordingly concluded that the instant case is not controlled by the decision in Burkley v. Burkley.

Moreover, even on its own facts, Burkley v. Burkley has been repudiated by the orphans' court of this county in an opinion written by Hunter, J., in Lippincott's Estate, 48 D. & C. 587, affirmed 349 Pa. 538. In addition, the Burkley case, decided in 1920, could hardly have been within the contemplation of testator writing his will in 1882 and dying the next year. See dissent-

ing opinion of Klein, J., in Lippincott's Estate, 48 D. & C. 587, 597, 602.

Possible intimations that in the instant case "descendants" should be interpreted as a word of limitation which it is urged may be gleaned from Lee v. Sanson, 245 Pa. 392, or Waln's Estate, 189 Pa. 631, are not persuasive. The actual decision in those cases did not so interpret the word, and the statements made in those decisions do not overcome the clear plan of testator's will in the instant case.

Counsel for the Henry line stresses that the difference in the language of the Henry line bequest from the preceding bequests requires a different interpretation. They urge upon the court that the will is carefully prepared, and that the difference in language must mean a difference in legal result. To this, two answers may be made: First, there are often two or more ways to express the same intention, and in the opinion of the court the addition of "per stirpe" makes each of the three bequests of the sixth paragraph express the same intention. Secondly, a testator, careful with his words, and having the intention contended by counsel, would probably have bequeathed a one-sixth share to each of the two children of Henry and stopped there. The court may properly consider that if such was his intention testator did his best to avoid expressing it. While this factor is not, by itself, controlling, when taken in conjunction with all the others it aids in reaching a conclusion as to what testator had really intended.

It is, therefore, held that "descendants" in the gift made to the Henry line is a word of purchase, as in the case of the gifts to the Anne and Mary lines.

(f) *Conclusion.*—"Descendants", as used in the sixth paragraph of the will, is a word of purchase with respect to the shares held in trust for each of the three lines, namely, Anne and her descendants, Mary and

her descendants, and the children of Henry, and descendants.

## 2. *Bequests Conditioned Upon Survivorship of Trust*

The conclusion that "descendants" is a word of purchase and that distribution is to be made to descendants stirpitally, necessarily carries with it the conclusion that only persons living at the termination of the trust are entitled to share; that is, that the estate of any person dying before the last surviving life tenant has no interest, and that the devisee of any person so predeceasing the last life tenant has, likewise, no interest. In fact, whether descendants is a word of purchase, and whether the interests of the remaindermen are conditional upon their surviving the termination of the trusts, are aspects of the same problem.

(a) *Language of the Will.*—As already discussed under heading 1(a), decedent intended to benefit only persons living at the time when the lineal line should be extinct, that is, upon the termination of the trust. In addition to the reasons already set forth for this conclusion, corroboration of this interpretation can be found in a comparison of two provisions of the fourth paragraph of the will with respect to the distribution following the death of a daughter. Testator provided that upon the death of a daughter her share was to be paid to "such of her children or their descendants" as she should appoint by will, and in default of such appointment, equally among "her children or the descendants of deceased children 'per stirpe'." There is no express condition of survivorship in this provision, but it is apparent that testator believed that he was speaking of children and descendants surviving the death of his daughter, for he adds, "in case she was unmarried or had no children or descendants *surviving* then to pay the net income of such share to my *surviving* daughter . . .". (Italics supplied.)

Manifestly, the provision last quoted was intended by testator as alternative or antithetical to the earlier quoted provision. Manifest also is it that he must have thought that in the preceding sentence he had made only a bequest to surviving children and descendants when he referred simply to children or descendants. He assumed that survivorship beyond the daughter's death was implicit in that phraseology. By the same token, testator must have had that same thought when he speaks in paragraph 6 of children and descendants taking at a distant date.

It is also noted that testator used "per stirpe" in both paragraphs 4 and 6, so that no distinction can be made in terms of the inclusion of this phrase in one paragraph and its absence from another.

(b) *Substitutionary Class Gifts.*—The sixth paragraph has been above interpreted as making a gift to "descendants" only by way of substitution for a gift to their ancestors which failed because of the prior death of the latter. A gift to "descendants" as a group is necessarily a class gift.

In the case of substitutionary class gifts, the ordinary rule of construction is that no member can participate unless he is alive at the time of distribution. In Feeney's Estate, 293 Pa. 273, testator provided that upon the termination of the trust the estate was to be distributed to named "residuary legatees or their heirs". The court stated (293 Pa. at 282):

". . . it is evident that (testator) meant that the heirs of such residuary legatees were to take as substitutionary legatees if the named legatees themselves were not alive to take at the death of the children of the life tenant, respectively."

In Baumann v. Baumann, 63 D. & C. 681, the court held that a remainder to a brother "or his heirs" was not transmissible. The court stated (63 D. & C. at 693):

"The persons to take as heirs will be determined as of the date of death of the life tenant. It being a substitutionary devise, the persons to take could not be determined until the death of the life tenant: Barnard Estate, 351 Pa. 313."

Counsel for the Henry line stresses that a contingent remainder is transmissible so long as the contingency does not relate to the capacity to take or the identity of the person claimed to be the remainderman: Moss' Estate, 80 Pa. Superior Ct. 323.

This does not dispose of the matter in controversy, for it is indisputable that however transmissible a contingent interest may be it remains, nevertheless, subject to the condition which makes it conditional. Likewise, a vested remainder, subject to divestment by the occurrence of a condition subsequent, carries with it, despite its being transferred, the potential of being terminated by the occurrence of that condition. As the interest of the members of the collateral lines are otherwise held to be conditional upon surviving the termination of the trust, it is immaterial whether prior to that time their interests were transmitted or transferred. Whether transmitted or not, those interests remain subject to the infirmity of destruction should the alleged remaindermen die before the termination of the trust.

(c) *Divide and Pay Rule.*—In the instant case the gift to the three collateral lines is derived from the direction to the trustee to "divide" the trust fund into thirds and to "transfer and convey" one share to each line. The instant case thus comes within the scope of the rule that where a gift is not expressly made, and is merely implied from a direction to divide and pay over, the beneficiary must be alive at the date of distribution or he acquires no interest: Thompson Trust, 363 Pa. 85; Rickenbach Estate; 348 Pa. 121; Hoffman's

Estate, 147 Pa. Superior Ct. 124; Selser's Estate, 135
Pa. Superior Ct. 480.

It is recognized that this rule has been frequently
criticized, and that the courts are frequently eager to
find some basis on which to make an exception to its
application. Likewise, the A. L. I. Restatement of the
Law of Property rejects the rule. The answer to these
considerations is that in the instant case there is pres-
ent no factor which justifies an exception to the rule,
which, in the absence of such exception, is still the law
in Pennsylvania. Moreover, while the A. L. I. Re-
statement of the Law of Property rejects the rule eo
nomine, it achieves the same result as would be
achieved by application of the rule by other provisions,
the net effect of which is that survivorship to the date
of distribution is required in a case such as that now
pending: A. L. I. Restatement of the Law of Property,
§296(1) (b); comment (g); Illustration 3. See also
section 252.

In Selser's Estate, 135 Pa. Superior Ct. 480, the
divide and pay rule was applied, leading to the con-
clusion that the estate of a remainderman who did not
survive the life tenant had no interest in the estate.
The will provided that upon the death of the life tenant
without children or issue, the principal was to be
"divided" into three equal shares, and one share "paid
over to William A. Selser, or his issue". Selser died
without issue during the life of the life tenant. Upon
the latter's death, Selser's estate claimed an interest
in the principal. The court applied the divide and pay
over rule, and held that the estate of Selser had no in-
terest because he had not survived the date of distri-
bution.

Counsel for the Henry line seeks to overcome the
force of this decision on the basis that the term is
"issue" rather than "descendants". This is immaterial

with respect to whether the divide and pay over rule is still recognized, for no claim was made on behalf of issue of Selser, he having died without issue. Apart from this, had there been issue it is clear that they would have been required to survive the death of the life tenant in order to take. Since Selser, their ancestor, had to survive, they, taking in his stead, must also be required to survive. The fact that the Selser will speaks of "issue" and not of "descendants" does not distinguish Selser's Estate because of the almost interchangeable character of the two terms.

Counsel for the Henry line claim that Selser's Estate should be distinguished, inter alia, because there was an express provision for the disposition to be made in the event of an "intestacy" as to the residuary estate. This, however, is not material, for it was first necessary to determine that there was an "intestacy" before this clause could operate. Furthermore, there is nothing in the opinion which indicates that the court would have decided otherwise had there been no "intestacy" clause in the will, on the theory that the court would strive to avoid an intestacy.

(d) *Presumption of Vesting.*—While modern law favors the vesting of interests, it will give effect to a remainder which is conditioned upon the recipient's surviving termination of the antecedent estate. A plain intent to achieve that end is sufficient, and it is not necessary that a testator expressly state that he does not intend to create a vested remainder.

Moreover, the rule in favor of vesting or in favor of vesting a remainder as early as possible, is given less effect as the generation of testator becomes more remote from the recipient's generation, and as the recipient moves from a lineal to a collateral line: Laughlin's Estate, 336 Pa. 529; Groninger's Estate, 268 Pa. 184; Hoffman's Estate, 147 Pa. Superior Ct. 124.

In the light of the provisions already discussed, it is concluded that the presumptions in favor of vesting and of early vesting are not controlling.

(e) *Conclusion.*—It is held that only persons living at the termination of the trust are entitled to any share in the funds now accounted for.

Accordingly, the estates of those members of the collateral lines dying before the termination of the trust have no interest in the trust estate. Likewise, those claiming by devise from a person so dying have no interest, because the devisor could not transfer any greater estate than he possessed.

### 3. *Disposition of the Henry Line Share*

The holding that surviving the termination of the trust is a condition to receiving a share of the remainder means that the Henry line share does not pass to anyone in that line or anyone claiming through persons within that line of descent, all Henry line members having died before the termination of the trust.

(a) *Class Gift.*—A claim is made on behalf of the Mary and Anne lines that with the failure of the line of Henry the remaining one-third share passes to their respective lines.

In the sixth paragraph of his will, decedent directed his trustees to divide his estate into thirds, and to distribute one third to Anne or her descendants, another one third to Mary or her descendants, and the remaining one third to Henry's children and descendants. Prima facie, this would create individual rather than class gifts: Peterman's Estate, 115 Pa. Superior Ct. 121. See also Crozer's Estate, 257 Pa. 241; Sharpless' Estate, 214 Pa. 335.

To hold that, without more, a class gift has been created is indeed a disturbing precedent, for the logical extension of this conclusion would be that whenever a specific fund is divided among distributees they all constitute a class. It may be conceded that all the

remaindermen may be described generally or colloquially as a class of remaindermen to distinguish them from the class of life tenants. To say that the remaindermen constitute a class in the technical sense is another matter.

It is highly questionable whether the name "class" can be applied with accuracy. In the case of a true class each member of the class benefits by the death of any other member. In the instant case, it is contended by the same representatives of the lines of Mary and Anne that distribution is made stirpitally within each collateral line. Thus, upon the death of a member of any one line, his rights are not divided among the three collateral lines nor the members of the three collateral lines, but are distributed per stirpes within his own line. The only time when a typical incident of a class becomes apparent, if the contention of the lines of Mary and Anne is sustained, is when one collateral line becomes extinct. That line's interest then passes by "survivorship" to the remaining line or lines under this contention. Such a plan resembles more closely the traditional cross-remainder from one line to another than the succession within a class.

It is contended that such a gift over to the surviving lines should be found, because in that manner the estate will be kept within the family lines. It is admitted that the will shows a definite plan during the life of the trust to keep the property within the family, and to prevent its distribution in any way to persons not of testator's blood. So careful was testator in this respect that he provided in paragraph 4 that upon the death of his daughter her share of income should pass to such of her children or descendants as she shall appoint by will, and in default of appointment shall pass to her children and descendants of deceased children, and in default of children or descendants thereof

surviving, then "to pay the net income of such shares to my surviving daughter with power of appointment the same as her own share".

The failure of testator to make a like provision in paragraph 6 with respect to the extinction of any collateral line must be deemed to be either an intentional omission on his part or as indicating that testator did not contemplate that the contingency would ever arise when both his daughters' lines and the lines of one or more of the collaterals should be extinct. In Sharpless' Estate, 214 Pa. 335, weight was given to the omission of any provision creating survivorship in determining that a gift was not a class gift, in contrast with another provision of the will which created survivorship. In the instant case, whatever the reason for testator's omission of a survivorship clause, it is not for the court to correct his omission by writing into paragraph 6 a plan of distribution found only in paragraph 4. It is one thing to sit in the armchair of testator to ascertain what he intended by the words included in his will; it is another thing to sit down at testator's desk and add to his will a clause which testator might have wished to include had he the benefit of prophecy or hindsight: Rosengarten Estate, 349 Pa. 32, 37; Blair et al. v. Shannon et al., 349 Pa. 550, 554-55.

The conclusion that there is no class gift finds support in Verner Estate, 358 Pa. 280, 282, 284. In that estate testatrix directed that upon the death of any of the four life tenants "leaving lawful issue surviving, then I direct one-fourth of the principal of said trust fund shall be distributed and paid over to the children and heirs at law of the one so dying and thereupon the trust as to such portion of my estate shall cease and determine".

One of the life tenants survived testatrix, and then died without issue. The court held that there was an

intestacy rather than an implied gift over as to his share. In so holding the court stated that while testamentary gifts could be implied "though not formally expressed in the will . . . (where) such an inference is so clear as to be beyond reasonable doubt; it must not rest upon mere conjecture nor arise wholly from the disinclination of a court to declare a partial intestacy" (358 Pa. 280, 284).

It is contended that Verner Estate should not be regarded as authority in determining whether a class gift was created, because that question was not there involved. It is not believed that that is a full answer to the force of the opinion. Apart from its precise holding, that case shows that a judicial restraint exists which precludes adopting an interpretation of a will merely because that interpretation will avoid an intestacy. Here it is urged that a class gift should be found in order to avoid an intestacy. As in Verner's case, there must be something more persuasive in favor of the interpretation contended for than that it will avoid an intestacy.

Verner Estate also takes on added significance when it is appreciated that the lines of Mary and Anne now seek to achieve as an incident to a class gift the very result which the court refused to allow in Verner Estate as an implied gift.

It is not believed that Verner Estate is to be distinguished, as is contended, on the basis that there could be no class gift in that case because the will provided for a distribution of principal at different times. Class gifts to children or grandchildren with distribution as each attains a specified age have long been recognized.

Consideration has also been given to other decisions and to decisions from other jurisdictions, but it is not deemed necessary to discuss them.

(b) *Conclusion.*—As the Henry line is extinct and as neither a class gift nor a cross-remainder can be

invoked, it necessarily follows that the Henry share now passes by intestacy.

No statutory provision is applicable to prevent an intestate distribution. As testator died in 1883, the antilapse provisions of the Wills Acts of June 7, 1917, P. L. 403, and April 24, 1947, P. L. 89, are not applicable, and the applicable Act of June 4, 1879, P. L. 88, makes no provision with respect to lapsed shares of a residuary bequest.

Counsel for the Mary and Anne lines point out that the distribution of the Henry share by way of intestacy will involve administrative difficulties. This is undoubtedly true, as is the case wherever distribution must be made through old estates. That is not a factor which should alter the interpretation of the will, for the field of testamentary interpretation does not recognize a doctrine of non conveniens. It may well be that the difficulties will be less in actual experience than in contemplation. They will to some degree be eliminated by the plan of awards hereafter made.

### 4. *Distribution*

There was no objection to the account, which shows a balance of principal, personal estate, $46,897.97, and a balance of principal, real estate, $82,424.54; together, $130,322.51, which, composed as indicated, is awarded as follows:

To the personal representative of Emily Stewart Smith, deceased, one third;

To Ethel W. Stokes, one sixth;

To Atlee L. Wayne Wirgman Baulsir and Mary Elizabeth Wayne Wirgman Kittelle, each one twelfth;

To those persons, and in such shares as would be prescribed by the law applicable at the time of testator's death for the distribution of the property by intestacy, one third. Where this will involves distribu-

tion to estates of other decedents, leave is given the accountant to make distribution directly to such living persons as would ultimately be entitled to receive such shares. Whenever distribution is thus avoided to intervening estates, the fund so distributed shall be subject to the same debts and taxes, if any be due, as though the distribution were made through the avoided estates. The distribution made shall be set forth in the schedule of distribution. If the distribution of the estate raises questions of law or fact, the court, upon being informed thereof in writing, and after due notice to all parties in interest, will order such further audit or file such supplemental adjudication as shall be deemed necessary.

The account shows a balance of income, personal estate, $1,347.88, and a balance of income, real estate, $18.52, together, $1,366.40, of which, together with all additional income to date of distribution, subject to payments heretofore properly made on account of distribution, so much as accrued to October 30, 1950, is awarded to Fidelity-Philadelphia Trust Company, the executor of the will of Nathalie Denby McCrea, also known as Nathalie Denley McCrea, deceased, and the income thereafter is awarded to the same persons and in the same proportions as above directed in respect of the principal. . . .

PER CURIAM, November 2, 1951.—All of the questions raised by both sets of exceptions have been fully and exhaustively treated by the learned auditing judge in his scholarly and comprehensive adjudication. We are all in full accord with his conclusions and it would serve no useful purpose to repeat in this opinion what has been so well said in the adjudication.

The exceptions are therefore all dismissed and the adjudication confirmed absolutely.